UNITED STATES of America,
Plaintiff–Appellee,

v.

Fred WALLACE, Defendant–Appellant.

No. 93–3717.

United States Court of Appeals,
Seventh Circuit.

Submitted May 13, 1994.

Decided Aug. 19, 1994.

---

**1172**

Penelope C. Fleming, Office of the U.S. Atty., Milwaukee, WI, (submitted), for plaintiff-appellee.

Martin E. Kohler, Michael F. Hart, Robert S. Sosnay, Milwaukee, WI, for defendant-appellant.

Before CUDAHY, KANNE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

A jury convicted Fred Wallace of conspiring to possess with intent to distribute both cocaine and marijuana, and he was subsequently sentenced under the Sentencing Guidelines to 168 months of incarceration. He now challenges his conviction on the ground that it was not supported by sufficient evidence and his sentence on the ground that the district court wrongfully considered convictions that were more than ten years old in calculating his criminal history category. We affirm his conviction but vacate his sentence and remand for resentencing.

## I. Sufficiency of the Evidence

The government's case against Wallace was based primarily on the testimony of three of his seven coconspirators, James McWilliams, Jr., Tom Allen Wulf, and Tommy Eaton, all of whom had pled guilty and were testifying pursuant to plea agreements. McWilliams testified that between the summer of 1991 and the spring of 1992 he had "fronted" Wallace one or two ounces of cocaine[1] on five or six occasions. (June 28, 1993 Tr. at 110–11.) He would deliver the drugs to Wallace by hiding them underneath a porch behind a bar that Wallace owned. (Id. at 109–111.) McWilliams also testified that in May 1992 Wallace had introduced him to Wulf, whom McWilliams subsequently hired to remodel his bar. (Id. at 111–12.) From approximately that time until McWilliams' arrest in February 1993, Wulf acted as a courier between McWilliams and Wallace. About once every week to ten days, Wulf would deliver an amount of cocaine or marijuana ("like 10 ounces of coke or two pounds of weed") from McWilliams to Wallace and would return with Wallace's payment for the previous shipment. (Id. at 113–14.) Wulf kept track of Wallace's running account with McWilliams. (Id. at 141.) In addition to McWilliams' testimony, the government introduced telephone records revealing numerous telephone calls between Wallace's bar and McWilliams' residence or bar from June 1992 through February 1993, the same period during which Wulf had acted as a courier between the two.

Wulf's testimony substantially corroborated McWilliams' account. He testified that beginning in mid-July 1992, he had transported cocaine and marijuana to Wallace once or twice each month (June 29, 1993 Tr. at 244–45) and had carried cash from Wallace to McWilliams, usually in amounts of three to six thousand dollars. (Id. at 248–49.) He stated that "[t]he marijuana usually was one to two pounds per trip. Usually not much more than two or three," and that "[t]he cocaine started out ... small three, four, five ounces and towards the end got up to larger quantities, 10 and 15 ounces at a time." (Id. at 246.) Wulf would either give the drugs directly to Wallace or leave them in various places in and around Wallace's bar, such as the garage. (Id. at 247.) Occasionally, at

---

1. McWilliams testified that the drugs he delivered to Wallace were "Cocaine. Might be marijuana once or twice. I don't remember." (June 28, 1993 Tr. at 111.)

Wallace's direction, Wulf would deliver the drugs to various individuals residing at other locations. Primary among these recipients was Michael Watry, who later pled guilty to being a member of the same conspiracy. (*Id.* at 249–51, 253–54.) Wallace paid Wulf for his services. (*Id.* at 248, 251.)

Tommy J. Eaton also testified that he had acted as a courier between Wallace and McWilliams. Eaton, who also transported drugs to McWilliams from another coconspirator in California, began delivering cocaine and marijuana from McWilliams to Wallace's bar in "[l]ate '91 or early '92." (*Id.* at 186.) Like McWilliams and Wulf, he would leave the drugs "[e]ither in the garage or under the back porch." (*Id.* at 187.) Eaton made eight to ten deliveries to Wallace, each containing eight to ten ounces of cocaine or two to four pounds of marijuana. (*Id.* at 188.) He also carried money from Wallace to McWilliams in amounts of up to six thousand dollars on several occasions. (*Id.* at 189.) In 1992, Eaton received a motorcycle from Wallace in exchange for four pounds of marijuana. (*Id.*)

■ Wallace bears a heavy burden in attempting to overturn his conviction on the basis of insufficient evidence. In reviewing the evidence, we must draw all reasonable inferences in the government's favor, and we will reverse only if no rational jury could have found Wallace guilty beyond a reasonable doubt. *United States v. Hubbard,* 22 F.3d 1410, 1415 (7th Cir.1994). We will not reweigh the evidence or reevaluate the credibility of the witnesses. *Id.*

■ In order to prove participation in a drug conspiracy, the government must establish that a conspiracy existed and that the defendant knowingly and intentionally joined in its criminal purpose. *United States v. Cabello,* 16 F.3d 179, 181 (7th Cir.1994); *United States v. Fort,* 998 F.2d 542, 546 (7th Cir.1993). The government unquestionably

met that burden in this case. The testimony of the three coconspirators clearly established both that a conspiracy existed and that Wallace knowingly and intentionally participated in its goal of drug distribution.[2]

In support of his argument that the evidence was insufficient, Wallace cites *United States v. Van Wyhe,* 965 F.2d 528, 531 (7th Cir.1992), for this proposition:

"When a conviction rests solely upon the uncorroborated testimony of an accomplice, we will uphold the verdict unless the accomplice's testimony is incredible as a matter of law." To be incredible as a matter of law, the witness's testimony must be unbelievable on its face. "In other words, it must have been either physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all."

(quoting *United States v. Dunigan,* 884 F.2d 1010, 1013 (7th Cir.1989)). Contrary to Wallace's assertions, however, the evidence against him was neither uncorroborated nor "incredible as a matter of law." The testimony of each coconspirator was corroborated by that of the others as well as by the telephone records. In addition, Wallace has given us no reason to conclude that the witnesses' testimony was "incredible as a matter of law," nor do we independently discern any such indication. The evidence was clearly sufficient to support the jury's verdict.

## II. Sentencing

■ Finding Wallace responsible for five to fifteen kilograms of cocaine,[3] the district judge assigned him a base offense level of 32, to which no adjustments were made. Wallace's criminal history included numerous state court convictions, the various sentences for which produced a total of seven criminal history points. (*See* PSR ¶¶ 55–61.) In 1979, Wallace was convicted of theft and

**2.** We have detailed here only the evidence directly implicating Wallace, rather than that regarding the conspiracy as a whole. There were, as noted above, a total of seven coconspirators whose network extended to California, where the conspirators obtained the drugs they supplied to buyers in Wisconsin.

**3.** Prior to Wallace's sentencing, the parties agreed that he should be sentenced on the basis of that amount. The range represented both the cocaine and the cocaine equivalent of the marijuana. (*See* Second Addendum to PSR; Oct. 22, 1993 Tr. at 12–13.)

fined $170, which produced one criminal history point. U.S.S.G. § 4A1.1(c).[4] In 1980, he was convicted of theft and of criminal damage to property, and was sentenced to two concurrent one-year terms of probation, which again resulted in one criminal history point. *Id.* In the same year, he was convicted of burglary and sentenced to two years of probation. When his probation was subsequently revoked, however, he served eighteen months in prison. He therefore received three criminal history points for that sentence. U.S.S.G. §§ 4A1.1(a) & 4A1.2(k). In 1984, Wallace was convicted of possessing a controlled substance, for which he was fined $100, and of obstructing justice, for which he received two years of probation. He received one criminal history point for each of those sentences. U.S.S.G. § 4A1.1(c).[5] The total of seven criminal history points placed Wallace in Criminal History Category IV, which, in conjunction with his offense level of 32, produced a sentencing range of 168–210 months. The district judge sentenced Wallace at the very bottom of the range to 168 months.

Raising an objection that he did not make before the district court, Wallace now argues that the court erred in considering the sentences resulting from the 1979 and 1980 theft convictions because they had been imposed more than ten years prior to his initiation of the instant offense. Because Wallace waived this argument by failing to raise it before the district court, we review for plain error only. *United States v. Rosalez–Cortez,* 19 F.3d 1210, 1220 (7th Cir.1994); *United States v. Rivero,* 993 F.2d 620, 623 (7th Cir.1993).

Guidelines section 4A1.2(e) provides:

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant

being incarcerated during any part of such fifteen-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

We agree with Wallace that because the sentences imposed for the 1979 and 1980 thefts were both more than ten years old when he joined the conspiracy in 1991, they should not have been counted in calculating his criminal history points. Without those two sentences, Wallace would have received only five criminal history points, which would have placed him in criminal history category III and resulted in a sentencing range of 151–188 months.

Because it therefore sentenced Wallace on the basis of the wrong Guidelines range, the district court committed plain error. As we have previously noted, "[a] plain error is not only a clear error but an error likely to have made a difference in the judgment, so that failure to correct it could result in a miscarriage of justice, that is, in the conviction of an innocent person or the imposition of an erroneous sentence." *United States v. Newman,* 965 F.2d 206, 213 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992); *see also United States v. Prevatte,* 16 F.3d 767, 783 n. 16 (7th Cir.1994). Even more to the point, we noted in *United States v. Robinson,* 20 F.3d 270, 273 (7th Cir.1994) that "[a] sentence based on an incorrect guideline range constitutes an error affecting substantial rights and can thus constitute plain error." Although the sentence that the district court selected in this case is within the correct as well as the incorrect Guidelines range, we must remand unless we have reason to believe that the error did not affect the district court's selection of a particular sentence. *Williams v. United States,* —— U.S. ——, —— – ——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992); *United States v. Panadero,* 7 F.3d 691, 698 n. 4 (7th Cir.1993).

---

**4.** A fine is considered a sentence for criminal history purposes. *See* U.S.S.G. § 4A1.2, comment. (n. 4).

**5.** Wallace also had been convicted of operating a motor vehicle without a license in 1980 and again in 1982, although those convictions did not contribute any criminal history points. (PSR ¶¶ 58–59.)

Here, the district court chose the lowest possible sentence within the erroneous range. We have no reason to believe that it would not have selected an even lower sentence if given the opportunity to do so.

### III. Conclusion

For these reasons, we affirm Wallace's conviction but vacate his sentence and remand to the district court for resentencing consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, REMANDED.