44 F.3d 478
 UNITED STATES of America, Plaintiff-Appellee,
v.
Maria D. MAGGI, also known as Maria D. Wolleter, also known
as Maria L. Maggi, also known as Maria M. Lanier,
also known as Maria "Lucca" Lanier,
Defendant-Appellant.
 No. 93-2106.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 14, 1994.
Decided Jan. 3, 1995.
 
 Michael C. Carr, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Benton, IL, for plaintiff-appellee.
 Mark D. DeBofsky (argued), Alissa Camp, Debofsky & Debofsky, Chicago, IL, for defendant-appellant.
 Before LAY,* EASTERBROOK and RIPPLE, Circuit Judges.
 LAY, Circuit Judge.
 Maria De La Luz Maggi pled guilty to a four-count indictment charging her with one count of conspiracy to money launder in violation of 18 U.S.C. Secs. 2, 371, and 1956(a)(1)(B)(i), and three counts of obstruction of justice in violation of 18 U.S.C. Sec. 1503. She was sentenced under the Federal Sentencing Guidelines ("Guidelines") to sixty months imprisonment on the conspiracy count and forty-eight months on the obstruction of justice counts, resulting in a total imprisonment of 108 months.
 
 
 1
 On appeal, Maggi challenges the district court's (1) inclusion of the obstruction of justice counts in her sentence; (2) two-point enhancement for obstruction of justice; (3) refusal to reduce her sentence by reason of her minor participation; (4) eight-level enhancement because the value of funds exceeded $6,000,000; and, alternatively (5) failure to deduct three levels because she was convicted only of an uncompleted conspiracy of money laundering. We remand for resentencing for the court to consider whether the conspiracy charged was uncompleted; otherwise, we affirm the sentence and the district court's application of the Guidelines.
 
 BACKGROUND
 
 2
 Maggi began a romantic relationship with Randy Thomas Lanier in the summer of 1986. Lanier had been involved in a conspiracy to import and distribute marijuana since 1978. Maggi denies she had knowledge of this fact when their relationship began. During that period, Lanier's organization allegedly was responsible for importing from Columbia more than 600,000 pounds of marijuana to the United States. Some of this marijuana was eventually distributed in Illinois. Lanier was indicted in the Southern District of Illinois in January 1987.
 
 
 3
 Thereafter, Lanier became a fugitive and traveled in the United States and abroad. Maggi accompanied Lanier at various times, including two trips to Europe. Lanier had a number of investments, bonds, and accounts in Switzerland. Lanier was finally arrested off the shore of Antigua on October 26, 1987 and detained without bond. Maggi was present when Lanier was arrested.
 
 
 4
 While Lanier was in jail awaiting trial, he arranged numerous visits with his brother, Bobby Lanier, various attorneys, and Maggi, and gave them directions on how to manage his assets and keep the government from finding them. Lanier was convicted in October 1988 and was sentenced to life imprisonment on December 21 of that year. The jury also returned a special verdict of $60,000,000 against Lanier and in favor of the United States.
 
 
 5
 Approximately one week after Lanier's sentencing, Maggi rented a post office box in Hollywood, Florida, under her sister's name. Maggi used this box to transact business with Lanier's Swiss attorneys. She also met with Bobby Lanier twice, who gave her $200,000 and then over $360,000 to pay attorneys' fees for Randy Lanier's codefendants, to give to codefendant's families and Lanier's then current wife, and to move and store Lanier's car collection. In November 1989, Maggi traveled to Geneva, Switzerland, and tried to conduct business on behalf of Lanier with his attorneys and investment bankers. During this period, Maggi hid a number of documents at her sister's house in Plantation, Florida. Maggi married Lanier on August 31, 1990 at Oxford Federal Correctional Institution in Wisconsin.
 
 
 6
 On November 27, 1991, a grand jury returned a four count indictment against Maggi. Count I charged her with conspiracy to commit money laundering from 1986 through 1991, in violation of 18 U.S.C. Secs. 2, 371, and 1956(a)(1)(B)(i). Counts II-IV charged her with acts of obstruction of justice in violation of 18 U.S.C. Sec. 1503. The latter three counts charged that Maggi's conduct from December 1988 through May 1991 obstructed the federal grand jury investigation in the Southern District of Illinois, the Southern District of Florida, Switzerland, and elsewhere.
 
 
 7
 On September 8, 1992, Maggi pled guilty to all four counts in absence of a plea agreement. The court concluded the applicable Guidelines' offense level was thirty-one, producing a range of 108 to 135 months imprisonment. Thereafter, Maggi was sentenced to sixty months imprisonment for Count I, and forty-eight months for Counts II-IV, resulting in a total imprisonment term of 108 months. Maggi challenges her sentence and the application of the Guidelines.
 
 I.
 
 8
 Maggi claims her money laundering count includes the elements of obstruction of justice. Thus, she argues, the consecutive sentences the court imposed inappropriately punished her twice for the same conduct. This argument is unpersuasive because the Guidelines specifically provide for multiple counts relating to the same conduct or harm. Section 3D1.2 of the Guidelines addresses multiple, yet closely-related counts:
 
 
 9
 All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
 
 
 10
 . . . . .
 
 
 11
 (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
 
 
 12
 Section 3D1.3(a) then provides that "[t]he offense level applicable to [such] a Group is the offense level ... for the most serious of the counts comprising the group...." Section 3D1.5 instructs courts to use this offense level to calculate the total punishment range. Finally, section 5G1.2(d) directs courts to sentence defendants as follows:
 
 
 13
 If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law. (emphasis added).
 
 
 14
 The district court recognized the money laundering count embodies elements of obstruction of justice, and therefore grouped the offenses precisely as the Guidelines provide. Once the court determined the base offense level and added and subtracted enhancements and reductions, the court determined the "total punishment" to be 108 to 135 months. The court then imposed a sixty month sentence for money laundering and a forty-eight month sentence for obstruction of justice. Applying section 5G1.2(d), the court ordered these sentences to run consecutively, to the extent necessary to produce a combined sentence within the "total punishment" range of the Guidelines' offense level of thirty-one, to wit 108-135 months. Thus, Maggi's argument that these consecutive sentences punished her twice and went beyond the total punishment range is simply incorrect.[1] The district court properly grouped the counts and sentenced Maggi accordingly.
 
 II.
 
 15
 Maggi further contends that the two-point enhancement for obstruction of justice constituted improper double counting. She insists this increase punishes her for conduct already taken into consideration by the imposition of the three obstruction of justice counts.[2] We must disagree.
 
 
 16
 Section 3C1.1 of the Guidelines provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase offense level by 2 levels." Application Note 6 to this section addresses the applicability of this enhancement in a situation in which, as here, the defendant has been convicted of obstruction of justice along with one or more substantive offenses. This note states in pertinent part:
 
 
 17
 Where the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of Sec. 3D1.2 (Groups of Closely-Related Counts). The offense level for that group of closely-related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.
 
 
 18
 In the instant case, the district court conformed to the dictates of this note by grouping the money laundering and obstruction of justice offenses under section 3D1.2(c), applying the appropriate offense level for money laundering, and adjusting upward by two points. Thus, even though Maggi was convicted of both money laundering and obstruction of justice, the additional two-point obstruction enhancement was proper under the Guidelines.
 
 
 19
 Moreover, this formula ensures the two-point enhancement does not constitute "double counting." As discussed above, when closely related counts are grouped under section 3D1.2(c), the offense level used is that for the most serious of the counts. See U.S.S.G. Sec. 3D1.3(a), supra. Here, the money laundering count was the most serious, and therefore, the court applied its offense level. The court's subsequent two-point upward adjustment for obstruction of justice did not constitute double counting because it was used to enhance only this money laundering offense level. Had the obstruction of justice count(s) called for an offense level higher than the money laundering count (plus the two-point enhancement), Note 6, supra, provides that the obstruction base level would have applied, without the enhancement. This section of the Guidelines, as clarified by Note 6, was therefore crafted to avoid double counting for obstruction of justice.
 
 
 20
 We also reject Maggi's further implication that the enhancement somehow imposed duplicative punishment for her obstructive conduct. The enhancement is used merely to determine the applicable Guidelines range. Yet the court sentenced Maggi only once for obstruction of justice, and her forty-eight month sentence was within the statutory term. See 18 U.S.C. Sec. 1503. Thus, Maggi's suggestion that she was actually punished twice for her obstructive conduct is simply inaccurate.
 
 III.
 
 21
 Maggi also asserts the district court improperly refused to grant her a two-point reduction due to her minor participation in the conspiracy. We conclude that the court did not err in finding Maggi was not entitled to such a reduction.
 
 
 22
 Section 3B1.2(b) of the Guidelines provides that "[i]f the defendant was a minor participant in any criminal activity, decrease by 2 levels." Note 3 to this section states that "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal."[3] We review a district court's factual finding regarding a defendant's role in the offense under the clearly erroneous standard. United States v. Gutierrez, 978 F.2d 1463, 1471 (7th Cir.1992).
 
 
 23
 After considering the evidence, the court below concluded that Maggi was "a major participant in the role of the offenses charged in this indictment." The court therefore denied Maggi's request for a downward adjustment. Maggi contends that, after viewing the scope of Randy Lanier's drug enterprise in its entirety, her role was minor in comparison to that of the key players. Although Maggi's role in Lanier's ten-year drug conspiracy may have been relatively small, the record supports the court's conclusion that she was a central participant in the events underlying the money laundering and obstruction counts. The record suggests she played an important role in undertaking to transact business with Lanier's drug money once he was imprisoned and was a key player in conspiring to hide Lanier's assets and documents. While Maggi argues there is evidence to the contrary, we see nothing in the record that indicates the court's conclusion was clearly erroneous.
 
 IV.
 
 24
 Maggi's final argument is that the district court miscalculated the total offense level for conspiracy to launder money. She contends the evidence is insufficient to support the district court's finding that an eight-point enhancement for funds involving more than $6,000,000 was warranted. In the alternative, Maggi suggests the court should have deducted three points from the offense level because Maggi was indicted and pled guilty to an uncompleted conspiracy to money launder.
 
 A.
 
 25
 To determine the base offense level for conspiracy to money launder, a court must apply "[t]he base offense level from the guideline for [money laundering], plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. Sec. 2X1.1(a) (1992). Section 2S1.1 of the Guidelines addresses the offense level for money laundering convictions and calls for a base level of twenty. In addition, section 2S1.1(b)(2) provides for "specific offense characteristic" increases if the value of the laundered funds exceeded $100,000. For amounts greater than $6,000,000, the sentencing court must add eight levels to the base offense amount. In the conspiracy context, such a specific offense characteristic is determined on the basis of "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. Sec. 1B1.3, cmt. (n. 1) (1992).
 
 
 26
 The district court found it was reasonably foreseeable by Maggi that the conspirators' laundering activities would involve $6,000,000 to $7,000,000 and concluded the Swiss accounts actually hid that amount of funds. Maggi argues this conclusion was unsupported by the record and therefore erroneous. She contends there is no objective evidence indicating the Swiss accounts in question actually contained more than $6,000,000 at the time she became involved in the conspiracy. Rather, she insists, the only definitive statement of the amount of money the accounts contained suggests a combined balance of under $2,000,000. Thus, Maggi concludes, the court only should have increased the base level by five points--reflecting the actual amount of money at the time of her criminal conduct.
 
 
 27
 We disagree. The district court's conclusion that Maggi could reasonably foresee that the value of the funds would exceed $6,000,000, and that the accounts actually hid such funds, has sufficient support in the record. The court relied in part on Bobby Lanier's statement that there was $6,000,000 to $7,000,000 in the accounts at one time and Maggi's own admission that Randy Lanier told her each account contained $3,000,000. Although Maggi presented evidence that the accounts contained far less by the time she became involved, the court weighed the credibility of all of the evidence and concluded otherwise.[4] We find nothing in the record that indicates the court's determination was clearly erroneous.B.
 
 
 28
 In the alternative, Maggi contends the court erred by not reducing the section 2X1.1(a) base offense level by three points because the money laundering scheme was uncompleted. Section 2X1.1(b)(2) outlines the specific offense characteristic adjustment for conspiracies:
 
 
 29
 If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all of the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for the apprehension or interruption by some similar event beyond their control. (emphasis added).
 
 
 30
 Thus, Maggi contends, because she failed to complete all of the acts she and her co-conspirators thought necessary to complete the money laundering scheme, the court erred by not deducting three levels under this provision.
 
 
 31
 As the Government points out, Maggi failed to raise this alternative theory in the court below. We therefore review the district court's omission only for plain error. United States v. Wallace, 32 F.3d 1171, 1174 (7th Cir.1994); United States v. Rosalez-Cortez, 19 F.3d 1210, 1220 (7th Cir.1994). However, "[a] sentence based on an incorrect guideline range constitutes an error affecting substantial rights and can thus constitute plain error."[5] Wallace, 32 F.3d at 1174 (quoting United States v. Robinson, 20 F.3d 270, 273 (7th Cir.1993)). Maggi was sentenced to 108 months in prison after the court found her offense level to be thirty-one. A three-level deduction would have reduced her Guideline range to 78-97 months. Thus, if the court erroneously failed to deduct these three levels, the resulting prejudice to Maggi justifies our remanding the case for redetermination. See Wallace, 32 F.3d at 1174 ("[W]e must remand unless we have reason to believe that the error did not affect the district court's selection of a particular sentence.").
 
 
 32
 We think the district court committed plain error by failing to decrease Maggi's offense level by three points without making a factual determination whether Maggi completed her part in the money laundering scheme. Section 2X1.1(b)(2), supra, mandates a three-level decrease unless the defendant is found to have completed all acts the conspirators thought necessary to complete the substantive offense. We can find no indication in the record the district court made such a determination.
 
 
 33
 In fact, portions of the record suggest the court thought otherwise. For example, in discussing the amount of money involved in the conspiracy, the court seemed to doubt whether Maggi, acting on behalf of the conspiracy, successfully gained control over the funds:
 
 
 34
 but here we do have the overall management or attempted management of all of the money that is across the water in Switzerland or wherever.... And I think that that's what she was involved in and had an attempt to get control over. I don't know whether Mr. Lanier really wanted her to get control of it or not the way it turned out.... (emphasis added).
 
 
 35
 The court later observed that the "whole thing has been frustrated as far as [Maggi's] involvement is concerned...." Furthermore, it is unclear whether the Government seriously contests that Maggi was unable to gain control of the $6,000,000 to $7,000,000 the court found to be held in Switzerland at one time. There is also no indication Maggi completed all other acts she and her co-conspirators thought necessary to complete the conspiracy. The record below, as it stands, provides little or no support for refusing to reduce Maggi's offense level.
 
 
 36
 We therefore remand this issue for further consideration. See 18 U.S.C. Sec. 3742(f)(1) (stating remand is required if a sentence was imposed as a result of an incorrect application of the Guidelines); Williams v. United States, 503 U.S. 193, ----, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992); Wallace, 32 F.3d at 1174. Specifically, we direct the district court to determine whether Maggi successfully completed all acts she and her co-conspirators thought necessary to launder all of the funds, or whether she was about to achieve this when the Government intervened. If not, the court must resentence Maggi in accordance with 2X1.1(b)(2) of the Guidelines.[6]
 
 V.
 
 37
 For the foregoing reasons, we affirm the district court in part and remand in part for further consideration consistent with this opinion.
 
 
 
 *
 The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Maggi's reliance on section 5G1.2(c) of the Guidelines is misplaced. This section provides that the sentences on all counts shall run concurrently, but only if "the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment." U.S.S.G. Sec. 5G1.2(c) (emphasis added). In the instant case, the sixty month money laundering sentence was not adequate to achieve the total punishment of 108 months
 
 
 [2]
 Maggi also asserts the Government provided insufficient evidence of obstruction of justice to warrant the two-point enhancement. We find this argument is without merit, however, because Maggi pled guilty to the three obstruction counts, thereby waiving the Government's burden of proof. Thus, the only viable issue raised by Maggi's appeal is whether the conduct underlying the three counts also may support the two-point enhancement, or whether this constitutes double counting
 
 
 [3]
 Section 3B1.2(a) provides that "[i]f the defendant was a minimal participant in any criminal activity, decrease by 4 levels." Although Maggi suggested below that she may be entitled to this adjustment, she does not raise this argument on appeal, seeking only the two-point minor participation reduction
 
 
 [4]
 The court went out of its way to point out that he did not find credible the claims by the Swiss businessmen that half of the funds were lost in the stock market crash of 1987
 
 
 [5]
 The Government contends that United States v. Smith, 953 F.2d 1060, 1066-67 (7th Cir.1992), stands for the proposition that errors of as much as four levels in setting a defendant's offense level do not constitute plain error. We disagree. Smith involved subtle interpretive difficulties in applying the Guidelines. We determined that the lower court's interpretation was not plain error and "may not have been error, period." Id. at 1067. Smith is therefore unlike the instant case, which involves a possible misapplication, rather than subtle interpretation, of the Guidelines
 
 
 [6]
 Application Note 4 to section 2X1.1 is instructive in determining whether a reduction of one, two, or three levels would be appropriate. As discussed in section IV(A), supra, the district court's finding that it was reasonably foreseeable to Maggi that the conspiracy's money laundering activities could involve $6,000,000 to $7,000,000 was not clearly erroneous. Thus, the court's original eight-level enhancement under 2S1.1(b)(2) was proper. The record does not support the conclusion, however, that Maggi ever actually controlled, managed, or redirected more than $2,000,000, and the court never explicitly found that Maggi, acting on behalf of the conspiracy, succeeded in gaining control of any of the funds. Note 4 describes how Maggi's lack of success in laundering all of the Swiss funds may affect the analysis. This Note states in pertinent part:
 In certain cases, the participants may have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of part, but not all, of the intended offense. In such cases, the offense level for the count (or group of closely-related multiple counts) is whichever of the following is greater: the offense level for the intended offense minus 3 levels [under section 2X1.1(b)(2) ] ... or the offense level for the part of the offense for which the necessary acts were completed.... For example, where the intended offense was the theft of $800,000 but the participants completed (or were about to complete) only the acts necessary to steal $30,000, the offense level is the offense level for the theft of $800,000 minus 3 levels, or the offense level for the theft of $30,000, whichever is greater.
 Under the dictates of this Note, if Maggi succeeded in controlling something less than $2,000,000, such a partial completion of her task in the scheme would result in a reduction of the original eight-level enhancement under section 2S1.1(b)(2) by at least 3 levels. Because this Note requires the court to choose the greater of the offense levels, however, Maggi's offense level can be reduced by no more than the three-level reduction section 2X1.1(b)(2) provides. Also, in the unlikely event the court below finds Maggi actually completed her role in the laundering offense as to between $2,000,000 and $6,000,000 of the funds, a reduction of only one or two points would be warranted. This is true because the six or seven-level enhancement section 2S1.1(b)(2) would provide for laundering such amounts--without the 2X1.1(b)(2) deduction--would produce an offense level one or two points greater than the original eight-level enhancement minus three levels.