**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Malak KHAWAJA, Zafar Mian,**
**Defendants–Appellants.**

No. 93–3216.

United States Court of Appeals,
Eleventh Circuit.

Aug. 7, 1997.

Edwin R. Ivy, II, Orlando, FL, court appointed for Malak Khawaja.

Thomas M. Dawson, Leavenworth, KS, Frank A. Rubino, Coconut Grove, FL, for Zafar Mian.

Rick Jancha, Asst. U.S. Atty., Orlando, FL, Tamra Phipps, Kathy J.M. Peluso, Asst. U.S. Attys., Tampa FL, for U.S.

Before BLACK, Circuit Judge, and FAY and ALARCON *, Senior Circuit Judges.

BLACK, Circuit Judge:

Appellants Malak Khawaja and Zafar Mian challenge their convictions and sentences for money laundering. We affirm the convictions and vacate the sentences.

## I. BACKGROUND

### A. *The Money Laundering Sting*

In May 1991, Special Agent Lenny Lopes of the Criminal Investigation Division of the Internal Revenue Service (IRS) met with Manu Sunderdas Chatlani. During the meeting, Agent Lopes posed as an accountant and financial advisor for a fictitious cocaine trafficker. Agent Lopes advised Chatlani that he had approximately $2 million in United States currency, generated from cocaine sales, that he needed to legitimize and invest in the United States. Chatlani indicated that his friends could assist Agent Lopes in laundering the money.

In June 1991, Chatlani introduced Agent Lopes to Appellant Khawaja. Khawaja told Agent Lopes that he was in the international carpet business, which would be conducive to laundering drug money. Khawaja explained that they set up laundering transactions under the guise that Agent Lopes owned a carpet company that had consigned carpets to Khawaja for sale to the public. Khawaja would pay Agent Lopes with cashier's checks for Khawaja's purported sale of carpets that Agent Lopes supposedly had supplied to

---

* Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Khawaja. In return, Agent Lopes would secretly provide cash to cover the amount of the cashier's checks plus a commission, consisting of a percentage of the amount laundered. Khawaja assured Agent Lopes that as his carpet business frequently involved large cash transactions, the drug money would go unnoticed in the midst of his regular cash deposits. In October 1991, Agent Lopes met with Chatlani and they called Khawaja to tell him that they were ready to do business with him. Over the next four months, several transactions took place between undercover agents and Khawaja and Chatlani in amounts ranging from approximately $9,000 to $50,000.

In early June 1992, Agent Lopes met for the first time with Appellant Mian, the meeting being arranged by Chatlani. Mian gave Agent Lopes eight checks totaling $33,600 in exchange for cash. Agent Lopes advised Mian of the purported source of the cash and the need for secrecy. Over the next few months, two more transactions took place between undercover agents and Mian in amounts of $33,720 and $36,000.

In September 1992, Mian met directly with Agent Lopes to discuss their dealings. Mian did not want to involve Chatlani in the transactions, but he felt that Khawaja was trustworthy. Agent Lopes explained that he wanted to launder money in larger transactions and with more frequency. Mian suggested that they take measures to avoid detection and minimize interruptions in their operations.

On November 3, 1992, Khawaja informed Agent Lopes that Mian was ready to do a $100,000 deal. Agent Lopes stated that the deal would be set up for November 19. On that day, after Mian and Khawaja provided undercover agents with checks totaling $100,-000, Khawaja and Mian were arrested. On the same day, Chatlani was also arrested.

### B. *Convictions and Sentences*

On December 10, 1992, a grand jury returned a twenty-count indictment charging Khawaja, Mian, and others with conspiracy to commit money laundering, in violation of 18 U.S.C. § 371 (Count 1), and money laundering, in violation of 18 U.S.C. §§ 2, 1956(a)(3)(B) (Counts 2–20). Count 1 alleged that the defendants were involved in a plan to launder $2 million, and it outlined overt acts alleging the laundering of $570,556 in 19 distinct transactions. Counts 2–20 charged each of these 19 transactions as a separate money laundering offense. Khawaja was named in all the substantive money laundering counts and Mian was named in Counts 10, 11, 12, 14, and 20. On June 3, 1993, the jury convicted Khawaja on all counts and Mian on Counts 1, 11, 12, 14, and 20. The jury acquitted Mian on Count 10.

In computing their respective offense levels, Appellants' presentence investigation reports (PSRs) grouped their conspiracy and multiple money laundering convictions. *See* U.S.S.G. § 3D1.2(d).[1] The PSR then applied the money laundering guideline, U.S.S.G. § 2S1.1, and recommended a five-level increase above the base offense level because the conspiracy involved the attempted laundering of $2 million. *See* U.S.S.G. § 2S1.1(b)(2)(F). Appellants objected to the five-level enhancement. The district court overruled the objection, finding that Appellants "were sufficiently directly involved in several aspects of the conspiracy that would give them information that two million dollars was, if not specifically discussed, then certainly foreseeable." Applying the other adjustments, the court computed Khawaja and Mian's respective offense levels as 30 and 34.[2] The court sentenced Khawaja and Mian to 121 months' imprisonment and 188

---

1. Appellants were sentenced under the 1992 version of the United States Sentencing Guidelines.

2. Khawaja's total offense level of 30 was based on the following: (i) base offense level of 20 under § 2S1.1(a)(2); (ii) three-level upward adjustment under § 2S1.1(b)(1); (iii) five-level upward adjustment under § 2S1.1(b)(2)(F); and (iv) two-level upward adjustment under § 3C1.1.

Mian's total offense level of 34 was based on the following: (i) base offense level of 20 under § 2S1.1(a)(2); (ii) three-level upward adjustment under § 2S1.1(b)(1); (iii) five-level upward adjustment under § 2S1.1(b)(2)(F); (iv) four-level upward adjustment under § 3B1.1(a); and (v) two-level upward adjustment under 3C1.1.

months' imprisonment, respectively.[3]

In addition, Mian's PSR recommended a fine between $17,500 and $175,000. *See* U.S.S.G. § 5E1.2(c)(3). The PSR assessed Mian's financial condition and ability to pay as follows:

> According to the Internal Revenue Service, his adjusted gross income for the years 1987 through 1990 are as follows: 1987—$249,261; 1988—$98,208; 1989—$100,447, and 1990—$107,066. Lexis information obtained indicates that the home located at 3068 Zaharias Drive, Orlando, Florida, is taxed at $263,728 with a sale price of $335,000 in 1990. Based on this information, it does appear that he has the ability to pay a fine.

In his Second Supplement to Objections to Presentence Report, Mian objected to the financial information, asserting those resources reflected the earnings of his wife, who was a physician. At sentencing, Mian objected again, asserting that he has no money, as shown on a financial statement he had purportedly submitted to the probation office

earlier. The district court imposed a $175,000 fine, but neither addressed Mian's objection to the PSR nor made any finding regarding his financial ability to pay a fine.[4] After the sentencing hearing, the district court adopted the factual findings in the PSR as to matters upon which it did not make specific findings. As recommended by the PSR, the district court also ordered Khawaja and Mian to pay restitution to the IRS in the amount of $36,312.50, which represented the total commissions the IRS paid to members of the conspiracy to launder the purported drug money.

## C. *Issues on Appeal*

Appellants raise the following issues: (1) whether the district court erred in computing Appellants' offense levels; (2) whether the district court erred in ordering Mian to pay a $175,000 fine; and (3) whether the district court erred in ordering Appellants to pay restitution to the IRS for the commissions it paid to members of the conspiracy as compensation for their services in laundering drug money.[5]

---

3. Khawaja's sentencing range was 97–121 months based on an offense level of 30 and criminal history category of I. Mian's sentencing range was 151–188 months based on an offense level of 34 and criminal history category of I.

4. The district court stated, "[a]s to the other paragraphs [including the paragraph with Mian's financial information], since he was convicted of conspiracy, those paragraphs relate to the conspiracy and are properly included in the presentence report."

5. Appellants also raise the following issues: (1) whether the case should be dismissed because there is no showing on the record that the Government complied with 18 U.S.C. § 1956(e) and 26 U.S.C. § 7608(c) before conducting the investigation; (2) whether the Government failed to prove the property involved in the charged transaction was represented to be from specified unlawful activities, as defined in 18 U.S.C. § 1956(c)(7), and that the representations were made by law enforcement officers; (3) whether the district court erred in admitting (i) testimony of the agents of the federal governments, (ii) wire and oral communications intercepted from the phone of Chatlani, and (iii) cashier's checks made out to undercover companies of the IRS; (4) whether the district court's conduct and remarks at trial showed bias and prejudice; (5) whether the Government failed to present suffi-

cient evidence to disprove entrapment; (6) whether the district court erred in finding that they obstructed justice under U.S.S.G. § 3C1.1; and (7) whether the district court erred in imposing a three-level enhancement under U.S.S.G. § 2S1.1(b)(1).

In addition, Khawaja raises the following issues concerning his appeal: (1) whether his counsel was ineffective; and (2) whether the evidence was insufficient to support his conviction of Count 15. Lastly, Mian raises the following issues concerning his appeal: (1) whether he was improperly joined in the single charged conspiracy under Fed.R.Crim.P. 8(b); (2) whether multiple conspiracies were proved at trial, rendering the district court's denial of the severance motion erroneous and causing a material variance with the indictment; (3) whether the district court erred in denying his motion for new trial based on asserted ineffectiveness of counsel in not filing a motion for severance; (4) whether the charged financial transactions affected interstate commerce; (5) whether the district court erred in imposing a four-level enhancement under U.S.S.G. § 3B1.1(a); and (6) whether the district court erred in refusing to depart downwards based on sentencing entrapment or disparity between his sentence and a codefendant's sentence.

We affirm as to these issues. *See* Eleventh Cir.R. 36–1.

## II. DISCUSSION

### A. *Appellants' Offense Levels*

■ Appellants assert that the district court erred in computing their respective offense levels by failing to apply U.S.S.G. § 2X1.1 entitled "Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)." As Appellants failed to raise the issue at sentencing, we review for plain error. *See United States v. Newsome,* 998 F.2d 1571, 1579 (11th Cir.1993), *cert. denied,* 510 U.S. 1062, 114 S.Ct. 734, 126 L.Ed.2d 698 (1994).

Section 2X1.1 applies to conspiracies to commit money laundering. *See United States v. Acanda,* 19 F.3d 616, 618 (11th Cir.1994). Under § 2X1.1, the sentencing court applies the base offense level from the guideline for money laundering, "plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). Section 2S1.1 addresses convictions for money laundering offenses. U.S.S.G. § 2S1.1. Under § 2S1.1, Appellants' base offense level would be 20. *See* U.S.S.G. § 2S1.1(a)(2).[6]

Section 2S1.1 also provides for "specific offense characteristic" increases if the value of the laundered funds exceeds $100,000. *See* U.S.S.G. § 2S1.1(b)(2). In the conspiracy context, such a specific offense characteristic is determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). We find that the record would support a finding that Appellants, as members of the overall conspiracy, intended to and were capable of laundering $2 million immediately prior to the termination of the sting operation. Accordingly, a five-level enhancement would be warranted. *See* U.S.S.G. § 2S1.1(b)(2)(F).[7]

Next, § 2X1.1 provides for a three-level reduction "unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." U.S.S.G. § 2X1.1(b)(2). The record shows that although the conspirators intended to launder $2 million, they managed to launder only $570,556 prior to apprehension. The conspiracy was dependent on the IRS's fronting of the purported drug money, and the record does not show that at the time the IRS terminated its sting operation, Appellants had arranged for specific transactions to occur in the future. Accordingly, the conspirators had not taken crucial steps (including for example, preparing falsified documentation, securing cashier's checks, or arranging meetings for the exchange) to launder the remaining balance of $2 million. Consequently, Appellants neither believed that they had completed all the acts necessary on their part nor were they about to complete all such acts for the laundering of the entire $2 million. Khawaja and Mian therefore would be entitled to the three-level reduction under § 2X1.1(b)(2).[8]

The computation does not end at this point. The Commentary to § 2X1.1 provides:

In certain cases, the participants may have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of part, but not all, of the intended offense. In such cases, the offense level for the count (or group of closely-related counts) is whichever of the following is greater: the offense level for the intended offense minus 3 levels (under § 2X1.1(b)(1), (b)(2), (b)(3)(A)), or the offense level for the part of the offense for

---

6. The district court arrived at a base offense level of 20 as well, but by directly applying § 2S1.1 to Appellants' offenses.

7. The district court arrived at a five-level enhancement of Appellants' respective offense levels as well, but by directly applying § 2S1.1.

8. As the district court failed to apply § 2X1.1, the conspiracy guideline, it did not consider whether Appellants were entitled to a three-level reduction under § 2X1.1(b)(2).

which the necessary acts were completed (or about to be completed but for apprehension or interruption). For example, where the intended offense was the theft of $800,000 but the participants completed (or were about to complete) only the acts necessary to steal $30,000, the offense level is the offense level for the theft of $800,000 minus 3 levels, or the offense level for the theft of $30,000, whichever is greater.

U.S.S.G. § 2X1.1, comment. (n.4). In this case, the intended offense was the laundering of $2 million, but the conspirators only completed the acts necessary to launder $570,-556. We therefore must determine for each appellant whether his offense level would be higher based upon the intended offense of laundering $2 million minus 3 levels under § 2X1.1(b)(2) or the offense of actually laundering $570,556. *See United States v. Maggi,* 44 F.3d 478, 485 n. 6 (7th Cir.1995); *United States v. Aideyan,* 11 F.3d 74, 77 (6th Cir.1993); *United States v. Sprecher,* 988 F.2d 318, 321 (2d Cir.1993).

Under § 2S1.1, the conspiracy's laundering of $570,556 would require a three-level enhancement for laundering between $350,000 and $600,000.[9] This three-level enhancement, combined with the other adjustments, would result in offense levels of 28 and 32 for Khawaja and Mian, respectively. *See supra* note 2. Khawaja's final offense level would be 28 since it is greater than the offense level of 27 computed after applying the three-level reduction under § 2X1.1(b)(2) for the intended laundering of $2 million. Mian's final offense level would be 32 since it is greater than the offense level of 31 computed after applying the three-level reduction under § 2X1.1(b)(2) for the intended laundering of $2 million. As a proper application of the Guidelines would result in a lower offense level for each appellant than that computed by the district court, we find that the district court's failure to apply § 2X1.1 was plain error. *See Maggi,* 44 F.3d at 484. We therefore vacate Appellants' sentences.

### B. Appellant Mian's $175,000 Fine

■ The Guidelines require the imposition of a fine, unless the defendant establishes that he is currently unable to pay and is not likely to become able to pay a fine in the future. U.S.S.G. § 5E1.2(a); *see also United States v. Lombardo,* 35 F.3d 526, 527 (11th Cir.1994); *United States v. Paskett,* 950 F.2d 705, 709 (11th Cir.1992). When a fine is found to be appropriate, the sentencing court must impose a fine within the range specified by § 5E1.2(c), considering the factors listed in § 5E1.2(d). *See* U.S.S.G. § 5E1.2. These factors include: defendant's income; earning capacity; financial resources; the burden on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; the need to deprive the defendant of illegal gains; and the need to promote respect for the law, provide just punishment, and adequate deterrence. U.S.S.G. § 5E1.2(d). Explicit findings on these factors are not required; instead, "satisfactory compliance with § 5E1.2 merely requires that the record reflect the district court's consideration of the pertinent factors prior to imposing the fine." *Lombardo,* 35 F.3d at 530. Ultimately, the record must contain "sufficient information with respect to the seven factors to permit us to find that the district court did not clearly err in imposing or setting the amount of the fine." *Id.*

■■ In our review of the PSR, we find that it presented information with respect to the factors enumerated in § 5E1.2. As the district court reviewed the PSR before imposing the fine, we infer without hesitation that the district court considered the pertinent factors prior to imposing the fine. Mian nevertheless asserts that the PSR's findings on his ability to pay are inaccurate, and that he has no ability to pay a $175,000 fine. As Mian sought to avoid a fine on grounds of financial inability, he had the burden of establishing such inability at the district court. U.S.S.G. §§ 5E1.2(a), (d)(2); *see also United*

---

**9.** With respect to Mian, the conspiracy laundered only $433,320 because transactions that occurred prior to Mian's involvement in the conspiracy cannot be attributed to Mian. *See United States v. Carreon,* 11 F.3d 1225, 1235–36 (5th Cir.1994). This lower amount, however, does not entitle Mian to any further relief because it still falls within the $350,000 to $600,000 range. *See* U.S.S.G. § 2S1.1(b)(2)(D)–(E).

*States v. Marquez,* 941 F.2d 60, 65–66 (2d Cir.1991). Mian contends that he repeatedly objected to the financial information in the PSR and that he submitted a financial statement to the probation office showing that he had no money. The PSR that is part of the record on appeal neither states whether the probation office received a financial statement nor documents how it addressed Mian's original objection.[10] Moreover, Mian's allegation at sentencing that he submitted a financial statement, as well as his insistence that the PSR was inaccurate, went unaddressed. Under these unusual circumstances, we find that the financial information in the PSR is inconclusive. *See* Fed. R.Crim.P. 32(c)(1) ("At the sentencing hearing, the court ... must rule on any unresolved objections to the presentence report.").

■ The Government nonetheless asserts that all objections to the factual information in the PSR were unfavorably resolved against Mian by the district court's adoption of the PSR's findings subsequent to sentencing. The mere adoption of the PSR however cannot suffice for the district court's obligation to rule on unresolved objections specifically brought to the attention of the court at sentencing. *See United States v. Page,* 69 F.3d 482, 493–94 (11th Cir.1995) (noting that findings in the PSR that have not considered the parties' objections may be unreliable). Consequently, the record is insufficient for us to review the district court's decision that a $175,000 fine comports with Mian's financial resources, and we vacate the fine.

### C. *Restitution to the Internal Revenue Service*

■ The Victim Witness Protection Act (VWPA) authorizes a sentencing court to order the defendant to make "restitution to any victim" of the offense. 18 U.S.C. § 3663(a)(1)(A). A "victim" means "a person directly and proximately harmed as a result of" a defendant's criminal conduct. 18 U.S.C. § 3663(a)(2). Appellants assert that the Government is not a "victim" for pur-

poses of VWPA (and may not be awarded restitution) to the extent that it incurs costs in a sting operation to compensate a defendant for his services in facilitating illegal activity. Appellants' position has the support of the four circuits that have addressed the issue. *See United States v. Gibbens,* 25 F.3d 28, 36 (1st Cir.1994) (holding that value of food stamps sold by the Government to the defendant at a deep discount was not recoverable under the VWPA); *Gall v. United States,* 21 F.3d 107, 112 (6th Cir.1994) (holding that "drug buy" money advanced by the Government was not recoverable under the VWPA); *United States v. Daddato,* 996 F.2d 903, 905 (7th Cir.1993) (reaching a similar conclusion in dicta); *United States v. Salcedo–Lopez,* 907 F.2d 97, 98 (9th Cir.1990) (holding that money used by the Government to purchase false identification documents was not recoverable under the VWPA).

We agree with the reasoning of our sister circuits. The VWPA "aims to protect victims, not to safeguard the government's financial interest in funds used as bait to apprehend offenders." *United States v. Meacham,* 27 F.3d 214, 218 (6th Cir.1994). When the IRS paid commissions to compensate Appellants for their money laundering services, "[t]he government did not 'lose' money as a direct result of [Appellants'] activities." *Salcedo–Lopez,* 907 F.2d at 98. Nor is the IRS a victim under VWPA. Instead of being defrauded, the IRS got what it paid for: the payment of commissions to Appellants facilitated the illegal laundering transactions. *See id.* at 99. The IRS therefore is not entitled to restitution under the VWPA for the commissions it paid to Appellants as compensation for their services in laundering drug money.

### III. CONCLUSION

For the reasons stated in this opinion, we vacate the district court's judgment to the extent it sentenced Khawaja and Mian to 121 months' imprisonment and 188 months' imprisonment, respectively; imposed a $175,000 fine on Mian; and ordered Appellants to pay

---

**10.** The Government's appellate brief states that the PSR included the following statement: "The defendant to date has not provided a written

financial affidavit...." This statement, however, is missing from the PSR that is part of the record on appeal.

restitution to the IRS. The case is remanded for resentencing.

AFFIRMED in part, VACATED in part, and REMANDED.