**UNITED STATES of America, Plaintiff**

v.

**Fortunato MARBELT, Defendant**

**No. CRIM. A. 99–10347–REK.**

United States District Court,
D. Massachusetts.

Dec. 15, 2000.

---

Lenore Glaser, Stern, Shapiro, Weissberg & Garin, Boston, for Fortunato Marbelt (1), Defendants.

John Farley, U.S. Attorney's Office, Boston, for U.S. Attorneys.

Opinion

KEETON, District Judge.

## I. Pending Matters

Pending for consideration are the following matters:

(1) Defendant Marbelt's Motion for Discovery (Docket No. 35, filed June 29, 2000);

(2) Defendant Marbelt's Motion to Dismiss the Indictment (Docket No. 38, filed June 29, 2000) and accompanying Memorandum of Law (Docket No. 39. filed June 29, 2000);

(3) Consolidated Opposition of the United States to Defendant's Pretrial Motions (Docket No. 41, filed July 31, 2000);

(4) Supplemental Memorandum of Law in Support of Defendant's Motion to Dismiss (Docket No. 45, filed October 23, 2000); and

(5) Government's Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Docket No. 46, filed November 6, 2000).

## II. Factual Background

Defendant was arrested on September 22, 1999, pursuant to a criminal complaint charging him with a violation of 18 U.S.C. § 1956(a)(3), the federal statute prohibiting the laundering of monetary instruments, and was indicted by a federal grand jury on that same charge on October 23, 1999. Defendant summarizes the facts

leading to his indictment in the following way:

> The indictment charges Mr. Marbelt with a single transaction, which took place on August 13, 1999, and which involved the transfer of sixteen thousand dollars ($16,000) to Joanette Multi–Services and its subsequent delivery to an undercover agent in Yauco, Puerto Rico. The monies were delivered as eight thousand dollar [sic] ($8,000) in cash and eight thousand dollars ($8,000) in a check made payable to a name (presumably fictitious) provided by the informant. On August 11, 1999, an informant, working under the supervision of the United States Customs Service (hereinafter "the Customs Service") recorded a conversation with Mr. Marbelt, in which he told Mr. Marbelt that he needed to send approximately sixteen thousand dollars ($16,000.00) to Puerto Rico. On August 13, 1999, the informant went to Marbelt's place of business, Joanette Multi–Services, to deliver the sixteen thousand dollars ($16,000.00) and spoke with Marbelt. In that conversation, *the informant made it explicit that this money came from the sale of drugs, and was being sent to Puerto Rico to pay drug couriers who were bringing five kiliograms [sic] of cocaine into Puerto Rico.* Marbelt agreed to deliver the funds to a person in Puerto Rico and suggested that he would obtain a check for eight thousand dollars and deliver the remainder in cash. By pre-arrangement, on August 17, Marbelt contacted special agent Lopez, acting in an undercover capacity in Puerto Rico to arrange the delivery of the monies. Later that same day, Marbelt delivered to Lopez the eight thousand dollars in cash and the bank check from Family Bank. Although the Indictment doesn't specify, it is presumed that the bank in [sic] insured through the F.D.I.C.

Defendant's Motion to Dismiss the Indictment, Docket No. 39 at 2–3 (internal citations to the underlying criminal complaint omitted)(emphasis added).

Defendant states that "the facts in this case are not in dispute." Docket No. 39 at 2. Defendant has moved to dismiss the indictment, arguing that the United States Customs Service was not authorized to conduct the undercover operation. Defendant also argues that the indictment should be dismissed because the transportation of the monies from Boston to Puerto Rico does not constitute a financial transaction within the meaning of 18 U.S.C. § 1956. Defendant has also moved for discovery, and asks this court to order the Government to provide him with the United States Customs Service Internal Guidelines on Undercover Operations. For the reasons explained in Parts III and IV below, all of defendant's motions will be denied.

### III. Defendant's Motion to Dismiss the Indictment

#### A. Defendant's Argument that the United States Customs Service Was Not Authorized to Conduct the Underlying Investigation.

Defendant's primary contention for why the indictment should be dismissed, and the contention defendant stressed at the oral argument held on October 3, 2000, centers on a reading of the statute under which defendant has been charged. Defendant is charged under 18 U.S.C. § 1956(a)(3), which reads as follows:

Whoever, with the intent—

(A) to promote the carrying on of specified unlawful activity;

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law,

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or

imprisoned for not more than 20 years, or both. *For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.*

18 U.S.C. § 1956(a)(3) (emphasis added). The crux of defendant's argument is that the representation that the monies were the proceeds of drug activity was made by an informant at the direction of an agent of the United States Customs Service, and that Customs agents are not "authorized" to investigate drug-related money laundering crimes.

Defendant argues that "authorization" under the money laundering statutes is determined by 18 U.S.C. § 1956(e). The authority of the Customs Service, as an arm of the Department of the Treasury, is laid out in the statute as follows:

Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. *Such authority of the Secretary of the Treasury and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Postal Service, and the Attorney General.*

18 U.S.C. § 1956(e) (emphasis added). In accordance with this statutory directive, the Secretary of the Treasury, the Attorney General, and the Postmaster General have entered into a "Memorandum of Understanding" (MOU), a copy of which is attached to the Memorandum of Law in Support of the Defendant's Motion to Dismiss the Indictment, Docket No. 39. Defendant argues that the "shall" language in the above quoted statutory section makes compliance with the MOU mandatory. For the purposes of § 1956(a)(3), therefore, defendant argues, "[s]ection (e) of 18 U.S.C. § 1956 allows investigations to represent that monies are illegal proceeds *only* in accordance with an agreement between the Secretary of Treasury and the Attorney General." Supplemental Memorandum of Law in Support of Defendant's Motion to Dismiss, Docket No. 45 at 4 (emphasis added).

Under the MOU, the authorization of the United States Customs Service is stated to be as follows:

a. The United States Customs Service will have investigatory jurisdiction over violations of section 1957 or section 1957 involving the following specified unlawful activities: criminal offenses under 18 U.S.C. section 542 (relating to entry of goods by means of false statements), section 545 (relating to the smuggling of goods into the United States), section 549 (relating to removing goods from Customs custody), section 659 (relating to theft from foreign shipment), sections 1461–63 and 1465 (relating to illegal import or export of obscene matter), sections 2251–52 (relating to imports or exports of material involving sexual exploitation of children), section 2314 (relating to foreign transportation of stolen property), and section 2321 (relating to the import or export of certain motor vehicles or vehicle parts); 19 U.S.C. section 1590 (relating to aviation smuggling); 21 U.S.C. section 857 (relating to the illegal import or export of drug paraphernalia); criminal offenses under section 11 of the Export Administration Act of 1979 (50 U.S.C.App. section 2410); criminal offenses under section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705); criminal offenses under section 16 of the Trading with the Enemy Act (50 U.S.C.App. 16); and criminal offenses under section 38(c) of the Arms Export Control Act (22 U.S.C.

section 2778) (relating to exportation, in transit, temporary import, or temporary export transactions).

b. The United States Customs Service will have investigatory jurisdiction over violations of section 1956(a)(2)(B)(ii), involving the international transportation of monetary instruments or funds which are proceeds of some form of unlawful activity and where the defendant knew that the transportation was designed in whole or in part to avoid a transaction reporting requirement under 31 U.S.C. 5316 (Reports on exporting and importing monetary instruments).

MOU, Criminal Resource Manual No. 2186, at A2 (Attached to Docket No. 38). Defendant argues that the MOU, read together with 18 U.S.C. 1856(e), clearly indicates that the Customs Service does not have investigatory authority over investigations of money laundering based on drug offenses. The defense argument is that the quoted authorization does not say that the Customs Service was authorized to investigate the type of money laundering at issue in this case and therefore no agent could have been an "authorized" agent for the purpose of directing the informant to represent to the defendant that the monies in question were the proceeds of unlawful drug activity. Because the representation was not made at the direction of an *authorized* agent, the defense argument proceeds, the government will be unable to prove one element of the crime charged.

Neither party has cited any precedent ruling on the argument the defendant makes in this case. I am not aware of any case in which a court has been presented with or considered this argument, with the exception of a summary dismissal, by the Court of Appeals for the Eleventh Circuit, of a charge of this type pursuant to Eleventh Circuit Rule 36–1 in *United States v. Khawaja,* 118 F.3d 1454, 1457 (11th Cir. 1997). For the reasons explained below, I conclude that defendant's argument is

without merit. The statutory language and the legislative history persuade me that the Customs Service was "authorized" within the meaning of 18 U.S.C. § 1956(a)(3). I conclude, moreover, that lack of authorization would not be a valid defense to the crime charged.

Defendant asserts that his argument is based on clear statutory language. It is beyond genuine dispute, however, that a Customs Agent is "a Federal official authorized to investigate or prosecute violations of this section." 18 U.S.C. § 1956(a)(3). Defendant's counsel made clear at oral argument that defendant wishes this court to read into section (a)(3) a requirement that the Federal official who directs an informant to make a representation to a defendant that some particular property is proceeds of one kind of "unlawful activity" must have been given not merely a broad or general authorization but instead a particularized and explicit authorization to investigate or prosecute violations of 18 U.S.C. § 1956 that involve the unlawful activity specified. Nothing in the statutory language suggests that the Federal official's authorization is linked to the specific type of representation that the official is directing. The plain language of the statute suggests instead that any Federal official authorized to investigate *any* of the kinds of transactions within the scope of the statute, taken as a whole, can direct another to make *any* kind of representation about *any* of those kinds of transactions. This interpretation of the plain language of the statute as allowing any federal agent authorized to investigate any type of money laundering to direct an undercover sting operation is an interpretation that makes common sense. Although defendant is correct in his contention that the MOU is designed to distribute investigatory authority among different law enforcement agencies, defendant's further contention that the MOU and § 1956(e) provide for an absolute ban on Customs Service participation in an undercover operation of this type cannot

stand in light of the generalized authority to which the plain language of § 1956(a)(3) refers.

■ Here, the informant represented that the money came from "the sale of drugs and was being sent to Puerto Rico to pay drug couriers who were bringing five kiligrams [sic] of cocaine into Puerto Rico." Docket No. 39 at 3. The specific elements of this representation include (1) the sale of drugs, (2) the money derived from the sale was being sent to Puerto Rico, (3) the expected use was to pay drug couriers and (4) they were bringing into Puerto Rico (5) a very large quantity, namely five kilograms, of (6) cocaine. This degree of specificity is far beyond the requirements of the statute, and no lawmaker could be expected to fashion a law that would require that degree of specificity for each of all the thousands of different money laundering transactions the lawmaker meant to forbid. It is this specificity in the representation made by the informant, however, that is the very basis of defendant's argument; absent the specific representation that the proceeds were *drug* proceeds, no question about whether Customs Agents were authorized to approve the representation would be presented.

■ But this degree of specificity is simply not required. Although no court within the First Circuit has considered this issue, the Courts of Appeals for the Second Circuit, Fourth Circuit, Fifth Circuit, Seventh Circuit, Ninth Circuit and Eleventh Circuit have all held, in one way or another, that the "representation" made by a Federal Official under 18 U.S.C. § 1956(a)(3) does not have to be factually specific. *See, e.g., United States v. Nelson,* 66 F.3d 1036, 1041 (9th Cir.1995) (upholding conviction where law enforcement officers did not explicitly state that the cash in question was the direct product of unlawful activity) (citing cases); *United States v. Starke,* 62 F.3d 1374, 1382 (11th Cir.1995) (holding that a government official need not make express statements as to the source of the money, but that the government "need only prove that a law enforcement officer ... made the defendant aware of circumstances from which a reasonable person would infer that the property was drug proceeds"); *United States v. Castaneda–Cantu,* 20 F.3d 1325, 1332 (5th Cir.1994) (holding that "[l]aw enforcement agents involved in 'sting' operations are not required under § 1956(a)(3) to describe the source of funds to be laundered before each money laundering transaction"); *United States v. Kaufmann,* 985 F.2d 884, 892 (7th Cir. 1993) ("We do not believe that Congress intended for the term 'representation' to be narrowly read as requiring an express statement by government agents"); *United States v. McLamb,* 985 F.2d 1284, 1291 (4th Cir.1993) (rejecting defendant's argument that the "represented" provision in 18 U.S.C. § 1956(a)(3) is unconstitutionally vague, because any "ordinary person [would] be able to recognize the conduct in question as criminal"); *United States v. Stavroulakis,* 952 F.2d 686 (2nd Cir.1992) (upholding convictions for money laundering conspiracy under 18 U.S.C. § 1953(a)(3) when one conspirator believed the money was derived from gambling and the other believed the money was derived from narcotics). These cases have all held that although the representation under 18 U.S.C. § 1956(a)(3) must be that the proceeds are derived from a "specified unlawful activity" within the meaning of 18 U.S.C. § 1956(c)(7), the federal agents making the representation need not specify exactly the source of the money involved, but may simply give the defendant enough information that it would lead a reasonable person in the defendant's position to infer that the money did derive from some "specified unlawful activity." If federal agents are allowed to make representations in the more generalized form approved in these precedents, it would be odd to hold that an agent who authorized a more particularized representation was acting in a way that would make indictment and prosecution impossible.

Rather than stop at this point in the analysis and reject defendant's argument as so extreme as to be unworthy of further consideration, I assume in defendant's favor that he is proposing a somewhat less extreme contention. For example, one might argue that the closing sentence of 18 U.S.C. § 1956(a)(3) means that although a general authorization under the statute is all that is necessary for an agent to be "authorized" to direct an informant to make a representation, once the agent makes a representation that is as specific as the representation made in this case, the agent's authorization under § 1956(e) and the MOU must go to the specific unlawful activity alleged. That is, although specificity of representation is not required, and although a general authority to investigate is all that is required for a Federal official to be authorized, once that official directs an informant to represent to a suspect that the proceeds in question are "drug money," the official himself must have been authorized to investigate drug-related money laundering offenses. Even with this more measured reformulation of the defendant's argument, I conclude that it is unpersuasive. The reason is that it is fundamentally inconsistent with precedents on statutory interpretation by which I am guided. The central theory of these precedents is that a judge is to do a commonsense reading of text of the statutory provision to determine its indisputable meaning. Defendant would have the sufficiency of the indictment turn on the fact that the informant in this case represented to the defendant that the monies in questions were drug proceeds rather than the proceeds of smuggled goods, or even the proceeds of imported drug paraphernalia. I conclude that this would be an odd interpretation contrary to the manifested meaning of this enactment.

These conclusions from an analysis of the statutory text are reenforced by a consideration of the legislative history of the statute. The Senate Report on § 1956(e) declares that:

In any event, the fact that one Department has investigated a possible violation that by agreement or otherwise should have been investigated by the other, or that a third agency has investigated a possible violation will not be a defense to violation and will confer no rights on any defendant.

S.Rep. No. 433, 99th Cong., 2nd Sess. 14 (1986) (Exhibit C, Docket No. 41).

The MOU explains:

As clearly stated in the legislative history of the Act, this MOU does not confer any rights on any third party, including a defendant or other party in litigation with the United States. The fact that a bureau investigates a violation of section 1956 or section 1957 that should have been investigated by another bureau under the terms of this MOU, or that an agency not a party to this MOU investigates a violation of section 1956 or section 1957, confers no rights and provides no defense to any party.

MOU, Section I (attached to Docket No. 38).

## B. Defendant's Argument that the Transportation of the Funds from Boston to Puerto Rico is Not a Financial Transaction

█ Defendant next argues that the indictment should be dismissed because the transportation of the monies from Boston to Puerto Rico was not a financial transaction within the meaning of the statute. Of the money involved, eight thousand dollars was in cash, and eight thousand dollars was in the form of a check. At the time of defendant's initial motion to dismiss the indictment, defendant did not have information about whether this check was drawn on a federally insured bank, and argued that defendant's obtaining of the check might not be a transaction. During the course of the last case management conference in this matter, however, defendant acknowledged that the actions of the defendant in changing the cash provided by the informant into this check did consti-

tute a transaction within the meaning of the statute. Defendant continues to press his argument that the transportation of the eight thousand dollars cash was not a transaction within the meaning of the statute.

■ Defendant's motion to dismiss the indictment, in so far as it rests on this proposition, will be denied. "A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only to the question of the validity of the indictment on its face." *United States v. Vicenzi*, 1988 WL 98634, *3 (D.Mass.1988) (citing *United States v. Winer*, 323 F.Supp. 604, 605 (E.D.Pa. 1971)). When, as here, the questions raised in the motion to dismiss the indictment involve mixed questions of fact and law, properly decided at trial, a motion to dismiss the indictment must be denied.

## IV. Defendant's Motion for Discovery

Defendant seeks discovery of the United States Customs Service Internal Guidelines on Undercover Operations. This motion is denied.

■ At the last case management conference, defendant argued that the guidelines were necessary because the MOU mandated that all undercover operations be reviewed according to these guidelines. As explained in Part III, above, I do not accept defendant's contention about the meaning of the word "authorized" in the statute, and I hold that the Customs Service was authorized to conduct an undercover investigation within the plain meaning of 18 U.S.C. § 1956(a)(3). These internal guidelines could not possibly be material to a defense theory based on the meaning of the statute.

Nor would a showing of some deviation from the guidelines by the agent in this case be a ground of effective defense. A showing that the Customs Service had not followed its internal guidelines is not a valid defense to the crime charged. *See* *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Taking into account also the extremely sensitive nature of the internal guidelines of the Customs Service, I conclude that it is appropriate to deny defendant's motion for discovery.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendant's Motion to Dismiss the Indictment (Docket No. 38, filed June 29, 2000) is DENIED;

(2) Defendant's Motion for Discovery (Docket No. 35, filed June 29, 2000) is DENIED.