In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1572

CHARLES DERRICK KELLER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-cv-365-JPG—**J. Phil Gilbert**, *Judge.*

ARGUED FEBRUARY 16, 2011—DECIDED SEPTEMBER 23,2011

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* This case raises questions about timeliness and waiver in connection with a federal prisoner's motion under 28 U.S.C. § 2255 to set aside or correct an enhanced sentence based on predicate state-court convictions that are alleged to have been vacated. Charles Derrick Keller pleaded guilty to possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). In his plea agreement, he waived his right to contest any

aspect of his conviction or sentence unless the sentence exceeded either the sentencing-guidelines range as calculated by the district court "or any applicable statutory minimum, whichever is greater." The district court sentenced Keller as an armed career criminal to a term of 180 months, the statutory minimum. *See* 18 U.S.C. § 924(e)(1). In accordance with the terms of his appeal waiver, he did not pursue a direct appeal.

Nearly two years later, Keller filed a petition for habeas corpus in Oklahoma state court seeking to vacate two of the convictions that were used to enhance his federal sentence. The Oklahoma court entered an order purporting to dismiss the two cases, along with six others then pending against him. Keller promptly moved to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, arguing that the state court's dismissal order had the effect of vacating two of the three predicate convictions that had been used to classify him as a career criminal. The district court rejected Keller's motion as untimely and also held that it was barred by the waiver of postconviction remedies in his plea agreement.

We affirm. While Keller's appeal was in briefing, the Oklahoma court issued a *nunc pro tunc* order clarifying that its dismissal order did not in fact vacate Keller's predicate convictions. Both of Keller's arguments on appeal—that his § 2255 motion was timely under *Johnson v. United States*, 544 U.S. 295 (2005), and also that it fell outside the scope of the waiver provision in his plea agreement—depend on the fact that the two predicate

convictions were vacated. In light of the *nunc pro tunc* order, Keller is left without any good claim for collateral relief.

## I. Background

In the course of investigating a robbery in December 2005, police officers in Murphysboro, Illinois, learned that Keller had used one of the credit cards reported stolen during the crime. They located Keller at his grandmother's apartment, and their search of the apartment and a nearby car recovered other stolen goods, including a shotgun. Keller had an extensive criminal history, including state-court felony convictions for possession of hydrocodeine with intent to deliver (Sebastian County, Arizona Case No. CR99-825-1), unlawful possession of a controlled substance with intent to deliver within 2000 feet of a school (Sequoyah County, Oklahoma Case No. CF-2000-139), and assault with a dangerous weapon (Sequoyah County, Oklahoma Case No. CF-2001-89). Keller was charged with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and these three state-court felony convictions formed the basis of his classification as an armed career criminal under 18 U.S.C. § 924(e)(1). Keller pleaded guilty, and that classification moved his criminal history category to VI under the sentencing guidelines and placed him at a base offense level of 33.

At Keller's sentencing hearing on January 26, 2007, the district court awarded a three-point reduction for acceptance of responsibility, ultimately placing him at

offense level 30 with a sentencing-guidelines range of 168 to 210 months. Based on his classification as an armed career criminal, however, the statutory mandatory minimum sentence was 180 months. *See* 18 U.S.C. § 924(e)(1). The district court imposed the mandatory minimum 180-month sentence and entered judgment on January 30, 2007.

Keller did not file a direct appeal. Indeed, in his written plea agreement, he had waived his right to contest "any aspect of his conviction and sentence" unless "the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court []or any applicable statutory minimum, whichever is greater," in which case he "reserve[d] the right to appeal the reasonableness of the sentence."[1] Instead, on January 16, 2009, almost two years after the federal judgment was entered, he filed a petition for a writ of habeas corpus in state court in Sequoyah County, Oklahoma, seeking to undo two of his convictions. On April 24, 2009, on

---

[1] The plea agreement also contained two additional exceptions to the waiver of postconviction remedies:

> Defendant's waiver of his right to appeal or bring collateral challenges shall not apply to: 1) any subsequent change in the interpretation of the law [by this court or the Supreme Court] . . . which is declared retroactive . . . and which renders the defendant actually innocent . . ., and 2) appeals based upon Sentencing Guideline amendments which are made retroactive . . . .

These narrow exceptions are not at issue here.

the motion of a local prosecutor, the Oklahoma court issued an order summarily dismissing eight cases "pending" against Keller. The caption of this order lists case numbers CF-2000-139 and CF-2001-89, which correspond to his convictions for drug possession in a school zone and assault with a dangerous weapon, two of the three predicates for his classification as a career criminal.

On May 11, 2009, Keller returned to federal court and filed a pro se motion to vacate, set aside, or correct his federal sentence under 28 U.S.C. § 2255. He claimed, among other things, that the Oklahoma court's April 24, 2009 order effectively vacated his convictions in cases CF-2000-139 and CF-2001-89, and that under *Johnson v. United States*, 544 U.S. 295, he was entitled to pursue collateral relief because the removal of those convictions meant that he was not in fact a career criminal.

The district court denied the motion on two independent grounds: (1) it was untimely; and (2) Keller waived his right to bring a § 2255 motion in his plea agreement. When Keller asked the court for a certificate of appealability, *see* 28 U.S.C. § 2253(c)(1)(B), the court reversed itself on the timeliness finding but declined to certify the case for appeal. We issued a certificate of appealability, appointed counsel, and asked the parties to brief the *Johnson* issue and the scope of Keller's waiver of postconviction remedies.

While the appeal was in briefing, the Oklahoma court issued an order *nunc pro tunc* correcting its earlier dismissal order. The *nunc pro tunc* order, dated December 2, 2010, explained that the dismissal of three of the

eight cases listed in the April 24, 2009 order—including the cases bearing the numbers CF-2000-139 and CF-2001-89—was a "scrivener's error" and that "said error should be corrected." The *nunc pro tunc* order then "corrected" the earlier order so that it would "show those cases [CF-2000-139 and CF-2001-89] to read MOTION AND ORDER TO DISMISS APPLICATION TO REVOKE SUSPENDED SENTENCE." Though not transparently clear, the apparent purpose of the *nunc pro tunc* order was to limit the effect of the April 24 order so that it dismissed only the pending postconviction proceedings in the listed cases, not the underlying convictions.

The government then moved to supplement the district court record with a copy of the *nunc pro tunc* order. The district court granted this request, and the government supplemented the record on appeal to include the new state-court order. Keller moved to strike the order or alternatively for a stay while he attempted to appeal the *nunc pro tunc* order to the Oklahoma Court of Criminal Appeals. Before oral argument, we denied the motion to stay and said we would take the motion to strike with the merits of the appeal.

## II. Discussion

On an appeal from the denial of a § 2255 motion, we review the district court's legal conclusions de novo and its factual findings for clear error. *Stallings v. United States*, 536 F.3d 624, 627 (7th Cir. 2008). The district court properly denied Keller's § 2255 motion. The Oklahoma court's *nunc pro tunc* order clarified that the April 24,

2009 dismissal order did not vacate Keller's predicate convictions, so the district court was right to conclude that the § 2255 motion was untimely. Moreover, Keller's plea agreement waived his right to appeal or collaterally attack a within-guidelines or statutory minimum sentence. Because the Oklahoma court did not in fact vacate the convictions that served as predicates for Keller's statutory minimum sentence as an armed career criminal, the plea agreement's waiver provision blocks this § 2255 motion; the state court's *nunc pro tunc* order also leaves Keller without any basis for collateral relief.

## A.  Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a § 2255 motion must be filed within one year of:

> (1) the date on which the judgment of conviction bec[ame] final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). Keller filed his § 2255 motion more than two years after his conviction became final, making it untimely under subsection (1) of § 2255(f), and subsections (2) and (3) do not apply.

That leaves subsection (4); Keller argues that his motion was timely under that provision as the Supreme Court interpreted it in *Johnson.* In *Johnson* the Court held that a state-court decision vacating a predicate conviction used to enhance a federal defendant's sentence is a "fact" that restarts the one-year clock under § 2255(f)(4) *provided* the defendant exercised due diligence in seeking the vacatur and filing the § 2255 motion. 544 U.S. at 302. Keller contends that the Oklahoma court's April 24, 2009 dismissal order had the effect of vacating two of the three convictions used to classify him as an armed career criminal and that he exercised due diligence in seeking the vacatur.

The April 24, 2009 order lists eight case numbers in its caption—including the two relevant here, cases CF-2000-139 and CF-2001-89—and summarily states that "the above styled case [sic] against said defendant is hereby dismissed." As the *nunc pro tunc* order explains, however, the April 24, 2009 order contains a "scrivener's error."[2]

---

[2] As we have noted, Keller moved to strike the *nunc pro tunc* order from the appellate record because it did not exist when

(continued...)

Instead of dismissing the underlying cases bearing those numbers, the state court clarified that its April 24, 2009 order was intended to dismiss the "Application to Revoke Suspended Sentence" in those cases. By correcting the April 24, 2009 order in this way, the Oklahoma court signaled that it had not meant to undo Keller's underlying convictions.

Thanks to the *nunc pro tunc* order, we need not decide what effect the April 24, 2009 order might have had

---

[2] (...continued)
the district court ruled on his § 2255 motion. That motion is denied. Although it is true that "we generally decline to supplement the record on appeal with materials that were not before the district court," *Ruvalcaba v. Chandler*, 416 F.3d 555, 562 n.2 (7th Cir. 2005), the *nunc pro tunc* order does not fall within this general rule. We "ha[ve] the power, in fact the obligation, to take judicial notice of the relevant decisions of courts . . . , whether made before or after the decision under review." *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996). Had the government not supplemented the record, we would have taken judicial notice of the *nunc pro tunc* order, which has "'a direct relation to matters at issue.'" *See id.* (quoting *Philips Med. Sys. Int'l v. Bruetman*, 982 F.2d 211, 215 n.2 (7th Cir. 1992)). In the alternative, Keller asked that we stay these proceedings while he appeals the *nunc pro tunc* order. We denied this motion prior to oral argument, but Keller renewed the request in his reply brief. Keller has not given us any information about the status of his appeal. Our own research indicates that the Oklahoma Court of Criminal Appeals dismissed the appeal on March 10, 2011. Accordingly, there appears to be no basis for a stay—no basis, that is, that Keller has supplied or our own independent research has unearthed.

were it considered on its own. We note for completeness, however, that the order contained several clues that it was not meant to have the effect of vacating Keller's underlying convictions. First, the order stated that the cases "pending" against Keller were dismissed. The only matters open and pending in cases CF-2000-139 and CF-2001-89 were postconviction matters, including Keller's habeas petitions and proceedings to revoke the suspended sentences Keller apparently received for those crimes. The order's use of the word "pending" suggests that the court's intent was to dismiss the pending postconviction proceedings, *not* to vacate the underlying convictions that were finalized years earlier. Although local legal usage varies somewhat by jurisdiction, we would expect any order vacating Keller's underlying convictions to contain more explicit language reopening the cases, vacating the judgments of conviction, and *then* dismissing the cases.

Second, the April 24, 2009 order is a single-page document containing both a "motion" and an "order" and appears to have been prepared by a local assistant district attorney. The "motion" part of the document asks for dismissal of the matters "now pending" against Keller "in the best interest of justice" because "defendant is now serving a sentence in the Federal Penitentiary." This suggests that the state court was only being asked to dismiss any pending state postconviction matters against Keller because he was serving a federal sentence.

*Johnson* held that an order vacating a state-court conviction that served as a predicate for a career-criminal

sentence is a "fact" that restarts AEDPA's one-year limitations period under § 2255(f)(4). 544 U.S. at 307. But the Court also explained that this "claim of . . . fact is subject to proof or disproof like any other factual issue." *Id.* Keller's § 2255 motion rested on his factual claim that the Oklahoma court's April 24, 2009 order vacated two of his predicate convictions, but this "fact" was clarified—indeed refuted—by the *nunc pro tunc* order. Because Keller's two predicate convictions were not in fact vacated, his one-year clock was not restarted under subsection (f)(4). Keller's § 2255 motion—filed more than a year after his conviction became final—was therefore untimely.[3]

---

[3] Most of Keller's appellate briefing is devoted to the question of his due diligence in seeking to vacate the Oklahoma convictions. *Johnson* held that a federal prisoner must exercise due diligence in bringing the § 2255 motion, 544 U.S. 295, 307 (2005), but also in "seeking the state vacatur order itself," *id.* at 309. The Court was not more specific about what the required "due diligence" might entail, but it did say that the prisoner must take "prompt action" after the date of the federal judgment. *Id.* at 308-09. The federal judgment in this case was entered on January 30, 2007, and Keller did not file his habeas corpus petition in state court until January 16, 2009, more than 23 months later. In *Johnson* the federal prisoner waited more than three years after entry of the federal judgment before bringing his state habeas petition; the Supreme Court said this was too long. *Id.* at 311. The Court also noted that "even if we moved the burden of diligence ahead to the date of finality of the federal conviction or to AEDPA's effective

(continued...)

## B. Plea-Agreement Waiver of Collateral Review

The district court cited another reason to reject Keller's § 2255 motion: His plea agreement contained a broad waiver of his right to collaterally attack his sentence. A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement. *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999). We have generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court "relied on a constitutionally impermissible factor (such as race)," the "sentence exceeded the statutory maximum," or the defendant claims "ineffective assistance of counsel in connection with the negotiation of [the plea] agreement." *Id.* For the waiver to apply, however, the disputed appeal or collateral

---

[3] (...continued)
date two days later, Johnson would still have delayed unreasonably, having waited over 21 months." *Id.* The Court thought it important that "Johnson has offered no explanation for this delay, beyond observing that he was acting *pro se* and lacked the sophistication to understand the procedures." *Id.* The Court rejected this explanation, observing that it had "never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness." *Id.* That the Supreme Court refused to accept an unexplained 21-month delay would appear to foreclose Keller's argument that he exercised due diligence; his 23-month delay was even longer and similarly unexplained.

attack must fall within its scope. *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010).

To bar collateral review, the plea agreement must clearly state that the defendant waives his right to collaterally attack his conviction or sentence *in addition to* waiving his right to a direct appeal. *United States v. Monroe*, 580 F.3d 552, 556 (7th Cir. 2009). Keller's does. The relevant paragraph in the plea agreement broadly states that Keller "knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law." The next paragraph confirms that this language is meant to cover direct appeal and collateral review; referring to the previous paragraph, it states that the "Defendant's waiver of his right to appeal or bring collateral challenges shall not apply," then sets out two narrow exceptions not relevant here. *See supra* note 1.

Keller contends that his § 2255 challenge nonetheless falls outside the scope of the waiver because the waiver provision explicitly preserves his right to appeal "if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court" or "any applicable statutory minimum, whichever is greater." This language is not uncommon in plea agreements; we have not yet addressed whether a valid *Johnson* claim falls within this kind of exception to otherwise broad appellate and collateral-review waiver language in a

plea agreement.[4] We need not decide the question here. Without his argument that the Oklahoma court vacated his prior convictions, Keller has no claim that his sentence exceeded the applicable guidelines range or the statutory minimum.

The case would be somewhat more difficult if the Oklahoma court *had* in fact vacated Keller's prior convictions. If it had, Keller's § 2255 motion arguably might fall within the exception to his waiver of appeal and collateral review.[5] The government responds that

---

[4] Keller does not argue for a categorical rule that a defendant *cannot* waive his right to seek collateral review under *Johnson* in the event his career-criminal qualifying convictions are vacated. We have generally declined to expand the categorical exceptions to appeal-and-collateral-review waivers in plea agreements; this has been true even in cases in which the district court clearly miscalculated the defendant's guidelines range. *See United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997) (A"waiver of a right to appeal is subject to exceptions," but "an improper application of the guidelines" is not one of them.).

[5] We note, however, that Keller's reliance on *United States v. Wallace*, 32 F.3d 1171 (7th Cir. 1994), and *United States v. Farmer*, 543 F.3d 363 (7th Cir. 2008), is entirely misplaced. *Farmer* and *Wallace* involved plain-error review of forfeited claims pertaining to improper application of the guidelines. *See Wallace*, 32 F.3d at 1174-75; *Farmer*, 543 F.3d at 375. Neither case had anything to do with a defendant's waiver of his right to collateral review in his plea agreement. *See Feichtinger*, 105 F.3d at 1190 (When a defendant signs a voluntary appeal

(continued...)

the exception does not apply because it only preserved Keller's right to appellate review for reasonableness if his sentence exceeded either the statutory minimum or the guidelines range "as determined by the Court," whichever was greater. Because Keller received a within-guidelines sentence at exactly the 180-month statutory minimum, the narrow reserved right to appeal on reasonableness grounds was not triggered; the exception covers nothing more and therefore doesn't open a window for a *Johnson*-type claim. The government's reading of the waiver language in the plea agreement has considerable force, but we need not resolve the matter here.

Because Keller's Oklahoma convictions were not in fact vacated, the district court properly denied his § 2255 motion. The district court's order is AFFIRMED.

---

[5] (...continued)
waiver in his plea agreement, the district court's improper application of the guidelines does not allow us to bypass the waiver and review a defendant's claim.).