In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1537

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN WILKOZEK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 576 — **Matthew F. Kennelly**, *Judge.*

ARGUED NOVEMBER 4, 2015 — DECIDED MAY 18, 2016

Before KANNE, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* In 2003 Brian Wilkozek pleaded guilty to one count of mail fraud for his participation in a mortgage-fraud scheme. The scheme was straightforward. Wilkozek drafted phony mortgage applications for in-the-know buyers to purchase properties from an in-the-know realtor at artificially high prices. He then submitted these applications to mortgage lenders, who approved them and

distributed the funds to the buyers. The buyers divvied the funds between all of the schemers and then walked away from the underwater properties. As Wilkozek expected, the original mortgage lenders quickly sold the mortgages to third-party lenders on the strength of the same phony applications. By the time the third-party lenders uncovered the scheme, all they could do was foreclose and sell the properties. They suffered losses of more than $700,000.

After Wilkozek was caught and pleaded guilty, he was ordered to pay restitution to the victims—namely, the third-party mortgage lenders. That restitution went unpaid, so the government asked the district judge to order Wilkozek's employer to turn over part of his wages. Wilkozek challenged the government's request via petition for *coram nobis*—an ancient writ used to collaterally attack a criminal judgment. Wilkozek claimed to have "new evidence" that proves the third-party lenders were not actually victims entitled to restitution. He also argued that the government miscalculated the amount of unpaid restitution. The judge disagreed on both fronts and entered the turnover order.

We affirm. The judge properly refused to grant the writ. Misclassifying a lender as a victim is not a fundamental error remediable by *coram nobis*, and even if it were, Wilkozek has not come close to proving that a misclassification occurred here. And the government has corrected its mistake in calculating the unpaid restitution, so no further action is necessary.

## I. Background

Wilkozek worked as a loan officer for JVS, Inc., a mortgage lender in the Chicago area. Beginning in 1997 he partic-

ipated in a scheme to defraud third-party mortgage lenders like Bank of America. The scheme was devised by realtor Theresa Holt, with Wilkozek playing the role of inside man. Specifically, Holt solicited in-the-know buyers to purchase relatively inexpensive properties at artificially high prices. Wilkozek then drafted bogus mortgage applications for the buyers and submitted them to mortgage lenders for approval. These lenders approved the mortgages and then quickly resold them to various third-party lenders. Importantly, in the course of deciding whether to purchase the mortgages, the third-party lenders relied on the very same phony applications Wilkozek submitted to the original lenders.

The scheme produced more than $1.4 million in mortgage-loan proceeds, far in excess of the market value of the mortgaged properties. The schemers distributed the funds between themselves—with Wilkozek pocketing $28,000 for his efforts—and the buyers walked away from the underwater properties. Once the third-party lenders caught on, they initiated foreclosure proceedings, suffering losses of about $713,400.

The conspiracy was exposed in 2002, and Wilkozek struck a deal with the government to plead guilty to one count of mail fraud. *See* 18 U.S.C. §§ 1341–1342. His deal also contained an appeal waiver. At sentencing the judge ordered him to pay $713,400 in restitution to the third-party mortgage lenders, jointly and severally with his coconspirators, and to serve a brief stint in prison.

Fast-forward to 2014 when the events giving rise to this appeal begin. Wilkozek hasn't satisfied the restitution judgment, and the government wants to collect. The government asked the district judge to order Wilkozek's then-employer

Insight Global to periodically turn over a portion of his wages in partial satisfaction of the restitution judgment. Wilkozek's response was two-fold. First, he petitioned for a writ of *coram nobis*, alleging that "new evidence" proves that the third-party lenders were not actually victims entitled to restitution. Second, he argued that the government failed to properly credit payments by his coconspirators to his remaining unpaid restitution. The judge declined to issue the writ, adopted the government's calculations, and issued the wage-turnover order.

## II. Discussion

### A. The Appeal Waiver

We first address the effect of the appeal-waiver provision in Wilkozek's plea agreement. It reads: "[T]he defendant knowingly waives the right to appeal any sentence imposed in accordance with paragraph 19 below [(relating to the prison term)] or the manner in which that sentence was determined." The government argues that this waiver strips the court of jurisdiction to consider Wilkozek's challenge. We disagree.

Two components make up this appeal, neither of which implicates the appeal waiver. First and foremost is Wilkozek's petition for a writ of *coram nobis*. This writ, like habeas corpus, is a *collateral attack* on a criminal judgment. *See Chaidez v. United States*, 133 S. Ct. 1103, 1106 n.1 (2013) (citing *United States v. Morgan*, 346 U.S. 502, 507, 510–11 (1954)). To be sure, the right to collaterally attack a judgment can be waived. *See Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). But such a waiver must be stated expressly. *See id.* ("To bar collateral review, the plea agreement must

clearly state that the defendant waives his right to collaterally attack … *in addition to* waiving his right to a direct appeal."). That plainly wasn't done here. Wilkozek's petition for *coram nobis* is not barred by his appeal waiver.

The second component of Wilkozek's appeal is a challenge to the government's calculation of the outstanding restitution balance. This is merely a defense to the government's motion to collect on the judgment. That is, Wilkozek is partially defending against the attempt to enforce the restitution judgment by arguing that the government is seeking to collect more than the amount authorized by the judgment. That plainly is not barred by the appeal waiver either.

**B.** *Coram Nobis*

Before we proceed to the merits, a word about jurisdiction, which is the subject of some confusion between the parties. Even though *coram nobis* is a collateral attack on a criminal judgment, a petition for the writ is considered simply another "step in the criminal case and not, like habeas corpus … , the beginning of a separate civil proceeding." *Morgan*, 346 U.S. at 505 n.4; *see also United States v. Denedo*, 556 U.S. 904, 913 (2009). That means the district court's power to hear a petition for the writ derives from the statute conferring subject-matter jurisdiction in the original criminal case. *See Denedo*, 556 U.S. at 914. That statute here is 18 U.S.C. § 3231, which confers on the district court original jurisdiction over "all offenses against the laws of the United States." The government asserts that the district court's power to hear Wilkozek's petition flows from the All Writs Act, 28 U.S.C. § 1651. But the All Writs Act "is not a font of jurisdiction." *Denedo*, 556 U.S. at 914. Rather, the Act simply

gives the district court the power to *grant* a writ of *coram nobis* when appropriate. *See Morgan*, 346 U.S. at 511.

Moving to the merits, "[t]he writ of *coram nobis* is an ancient common-law remedy" originally "designed 'to correct errors of fact.'" *Denedo*, 556 U.S. at 910 (quoting *Morgan*, 346 U.S. at 507). However, the scope of the writ has been broadened in modern times to claims of both legal and factual error, but only in criminal cases. *See id.* at 912–13; FED. R. CIV. P. 60(e) (abolishing the writ of *coram nobis* in civil proceedings).

In our circuit *coram nobis* relief is available when: (1) the error alleged is "of the most fundamental character" as to render the criminal conviction "invalid"; (2) there are "sound reasons" for the defendant's "failure to seek earlier relief"; and (3) "the defendant continues to suffer from his conviction even though he is out of custody." *See United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007) (quotation marks omitted); *see also United States v. Keane*, 852 F.2d 199 (7th Cir. 1988) (discussing elements in more detail). In considering a district judge's denial of the writ, we review conclusions of law de novo and findings of fact for clear error. *See Chaidez v. United States*, 655 F.3d 684, 687 (7th Cir. 2011) *aff'd* 133 S. Ct. 1103 (2013); *accord United States v. George*, 676 F.3d 249, 256 (1st Cir. 2012).

We begin and end our analysis with the first element. A fundamental error that invalidates a criminal proceeding is one that undermines our confidence that the defendant is actually guilty. *See Morgan*, 346 U.S. at 511. Only errors of this magnitude justify the cost of putting aside the interest in finality. *See Keane*, 852 F.2d at 206 ("At some point the judicial system must close old files and turn to the future, regret-

fully accepting the risk of error lest the quest for perfect justice become the enemy of adequate justice."). An obvious example is deprivation of counsel. *See Morgan*, 346 U.S. at 511–12.

Wilkozek has not argued that he is not guilty of mail fraud. His claims of error relate only to the restitution component of his criminal sentence. Restitution to a victim must be ordered when a defendant commits a property offense by fraud. *See* 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). As relevant here, a "victim" is defined as "a person directly and proximately harmed as a result of" the defendant's fraud. *Id.* § 3663A(a)(2). We have said that a person must *actually rely* on the defendant's fraudulent statements to his detriment in order to be a victim under this definition. *See United States v. Farano*, 749 F.3d 658, 666 (7th Cir. 2014). ("There is as yet no evidence … of such reliance by the refinancing banks, and in its absence those banks cannot be counted as 'victims' for restitution purposes, though their loss is loss" for sentencing purposes.). Here Wilkozek primarily argues that new evidence uncovered after the 2008 financial crisis proves that the third-party lenders did not rely upon his fraudulent statements and were therefore not victims entitled to restitution.

An error of this type is not of the "most fundamental character" as to render the conviction invalid. *Sloan*, 505 F.3d at 697; *accord id.* ("Restitution orders that sweep too much conduct into their calculations … do not rise to the level of a constitutional violation."). Misclassifying a third-party lender as a victim results in a windfall to that lender in that it will recover money it lost due to the defendant's criminal behavior that was otherwise unrecoverable as restitution.

This kind of error doesn't cast doubt on Wilkozek's guilt. So even assuming the district judge misclassified the lenders as victims here, there is no fundamental injustice to Wilkozek because *all* of the money received from the mortgage-fraud scheme was ill-gotten, regardless of whether the lenders actually relied on the bogus mortgage applications he drafted. *Cf.* § 1341 (defining elements of mail fraud).

But even if misclassifying a lender as a victim were a fundamental error, Wilkozek has not shown that such an error occurred here. In his plea agreement, Wilkozek *admitted* that the third-party lenders actually relied on the fraudulent applications he prepared. To prove that a misclassification error occurred, he must have evidence to overcome this admission. He has none. The only "evidence" he submitted were news articles and press releases describing troubling behavior by mortgage lenders (including some of the third-party lenders here) leading up to the 2008 financial crisis. This "evidence" doesn't overcome Wilkozek's admission that the third-party lenders actually relied on his fraudulent mortgage applications. Accordingly, the judge properly declined to issue the extraordinary writ of *coram nobis*.

## C. Miscalculation of the Outstanding Restitution Balance

Wilkozek also argues that the government did not properly credit him for restitution payments made by his coconspirators. The government admits that it failed to credit Wilkozek for $51,851.49 in payments made by Theresa Holt (the realtor) and has reduced Wilkozek's outstanding restitution balance by that amount. No more need be done.

AFFIRMED.