**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 21, 2017[*]
Decided December 21, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1725

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 CR 651-2 |
| ALFRED GEREBIZZA, *Defendant-Appellant*. | James B. Zagel, *Judge*. |

**O R D E R**

A jury found Alfred Gerebizza guilty of mail fraud and filing false income tax returns. His co-defendant, Daniel Spitzer, pleaded guilty. The district judge sentenced Gerebizza to 240 months' imprisonment and ordered him to pay $33,988,000 in restitution, jointly and severally with Spitzer, to the hundreds of victims of their

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

fraudulent scheme. Gerebizza appeals, pro se, and we affirm because his arguments are meritless.

Spitzer was the principal officer of Kenzie Financial Management Global, a trading company that oversaw 12 investment funds (collectively the "Kenzie Funds"). He and Gerebizza marketed and sold investments in the funds, representing to investors that their capital would be invested primarily in foreign currency. Gerebizza worked as the trading manager, oversaw employees, and interacted with investors. As part of its operations, the company mailed to investors account statements and tax documents that showed consistent profitable returns in their investments. Gerebizza told investors that as of June 30, 2009, the Kenzie Funds were worth about $250 million.

In reality the company and most of its investment funds were a sham—a Ponzi scheme. When investors began making redemption requests, the defendants paid for a while but then held the investors at bay with artifices designed to convince them that redemption was forthcoming. By late 2009 the money ran out. Investors reported the scam to the SEC, sparking an extensive investigation that revealed years of fraud.

The investigation revealed that the company had raised nearly $105 million from over 400 investors for the 12 funds. Approximately $71 million of its earnings were used to make payments to investors to perpetuate the Ponzi scheme, and only a fraction of the money was invested, producing a net gain of approximately one-tenth of one percent. The SEC also discovered that in September 2009—months after the company represented to investors that it had approximately $250 million in total assets—the Kenzie Funds collectively had only $4,101,807 in their domestic bank accounts.

In 2010 the SEC brought a civil action against Spitzer, Kenzie Financial Management, and related entities for violations of the Securities Act of 1933, 15 U.S.C. § 77q(a), and the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-6(1), (2), (4). *SEC v. Spitzer*, No. 10 CV 3758 (N.D. Ill. Dec. 6, 2010). A default judgment was entered against the defendants. During this time, Gerebizza filed for Chapter 7 bankruptcy and received a discharge order in January 2010. *In re Gerebizza*, No. 09-26632-PGH (S.D. Fl. Jan. 5, 2010). He also became the subject of an IRS investigation, which revealed that he had reported false information on his tax returns.

After the SEC prosecution, a federal grand jury indicted Spitzer for 10 counts of mail fraud, 18 U.S.C. § 1341. A superseding indictment added Gerebizza as a codefendant to the mail-fraud counts and also charged him with six counts of tax fraud.

Spitzer pleaded guilty. At sentencing the government relied on the calculation of an SEC accountant who investigated the funds in late 2009 to determine the amount of restitution. Starting with $105 million (the gross receipts), and then subtracting $71 million (the amount paid to investors as part of the Ponzi scheme), the accountant came up with net gains of $33,988,000. The district court accepted the calculation and ordered Spitzer to pay the latter amount in restitution.

Gerebizza, who also claimed to be a victim of Spitzer's fraud, went to trial, but not before he spent the pretrial period filing pro se attacks on the district court's jurisdiction and skipping most of his court dates. He even declined to attend his jury trial (he was in custody), and he refused to allow his court-appointed counsel to appear on his behalf. The jury found him guilty on all counts.

After the verdict, Gerebizza, who still refused to work with counsel, filed numerous pro se motions arguing that the district court lacked jurisdiction because, as Gerebizza saw it, his discharge order in bankruptcy court absolved him of all his debts. He also claimed that the mail-fraud counts of the superseding indictment failed to state an offense. The district court took no action on these pro se filings. Gerebizza was sentenced to 240 months' imprisonment, below the advisory guideline range of life imprisonment, and was ordered to pay restitution of $33,988,000. As we noted, the restitution order held Gerebizza jointly and severally liable with Spitzer.

Gerebizza raises several arguments on appeal, not all of which are easy to discern, and most of which are supported with inapposite authorities. We can tell at least that he reprises the two arguments he made after trial. First, he contends that the restitution order is illegitimate. He argues that the government and his victims are "estopped" from receiving restitution because they failed to file timely claims in his bankruptcy case. Relatedly, he argues that the district court did not have jurisdiction to impose a restitution order because, he believes, the bankruptcy order in January 2010 discharged him from all debts, including restitution claims in criminal proceedings.

Gerebizza's arguments about the effect of his bankruptcy are frivolous. A discharge order generally "discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). But an exception exists "for any payment of an order of restitution issued under title 18 of the United States Code." 11 U.S.C. § 523(a)(13). Indeed, the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), *requires* a judgment of restitution—regardless of a bankruptcy discharge—when a defendant is convicted of a property offense committed by fraud, such as mail

fraud under 18 U.S.C. § 1341. See *United States v. Wilkozek*, 822 F.3d 364, 369 (7th Cir. 2016) (acknowledging that district court is required to order restitution in cases of mail fraud). The district judge was not just allowed, but required, to order restitution.

To the extent that Gerebizza disputes the amount of restitution, he forfeited the argument because he failed to object to the calculation in the district court. See *United States v. Burns*, 843 F.3d 679, 685 (7th Cir. 2016). And we see no plain error. See FED. R. CRIM. P. 52(b). The district judge relied on the SEC's determination of the Kenzie investors' actual loss, which accounted for payments made to the victims as part of the Ponzi scheme. See *United States v. Allen*, 529 F.3d 390, 396 (7th Cir. 2008); see also *United States v. Swanson*, 483 F.3d 509, 515 (7th Cir. 2007) ("[T]o prove a restitution amount, the government must deduct any value that a defendant's fraudulent scheme imparted to the victims."). The judgment contains a list of 458 victims with their corresponding monetary losses, which collectively reach $33,988,000 in lost investments. *United States v. Dokich*, 614 F.3d 314, 319 (7th Cir. 2010) (affirming restitution amount where government filed detailed lists of investors and the amount each spent on defendant's securities). Gerebizza has a right to be sentenced on the basis of accurate information, but he has presented no reason to suspect that the calculation was inaccurate. See *United States v. Oliver*, 873 F.3d 601, 608 (7th Cir. 2017); see also *United States v. Rhodes*, 330 F.3d 949, 953 (7th Cir. 2003) (affirming restitution award "in the absence of any documented proof of miscalculation in the amount ordered").

Instead, Gerebizza argues that he is not responsible for any restitution because, among other things, he was not involved in the mail-fraud scheme. But professing his innocence without directly challenging the verdict does not establish any error in the calculation of the restitution amount. And although Gerebizza, as one player in the Kenzie scheme, may not be the direct source of all of the losses, he is jointly and severally liable, along with his codefendant Spitzer, for the entire amount because he was found guilty of participating in the mail-fraud scheme. See *United States v. Martin*, 195 F.3d 961, 968–69 (7th Cir. 1999) (recognizing joint liability for restitution for mail-fraud conviction).

Gerebizza next argues that the mail-fraud counts (he does not challenge the tax-fraud counts) of the superseding indictment are defective because they contain only "legal conclusions" and "naked assertions" that violate the pleading standards established under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). But Gerebizza improperly employs civil pleading standards to scrutinize his criminal indictment. See *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir.

2013) ("We do not believe that the concerns guiding the Court's approach in the civil context apply with equal force in the case of a criminal indictment."). And his argument that he was entitled to a criminal complaint in addition to an indictment is just a misunderstanding of the rules of criminal procedure. An indictment obviates any need for a criminal complaint, which sets forth potential charges but is not itself a charging document. See FED. R. CRIM. P. 3, 7.

Employing the correct standard of review, the superseding indictment here is legally sufficient because it "(1) states all the elements of the crime charged, (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense, and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010); see FED. R. CRIM. P. 7(c)(1). (We generously construe Gerebizza's filings as a motion to dismiss, which saves him from forfeiture and plain-error review.) In a mail-fraud case the government must prove that the defendant (1) participated in a scheme to defraud, (2) intended to defraud, and (3) used the United States mail in furtherance of the scheme. See 18 U.S.C. § 1341; *United States v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014).

Each relevant count in the superseding indictment alleges that Gerebizza intentionally participated in a scheme to defraud investors and describes, in detail, specific instances of his misconduct. In Count One, for example, the indictment describes Gerebizza's leadership role in operating the Kenzie Funds, which obtained over $105 million from over 400 investors through fraud. It further alleges that he knowingly mailed to investors false information about the investments. Gerebizza may deny the veracity of the allegations, but the charging document sets forth the elements of the crime and adequately informed him of the nature of the charges against him.

We have considered Gerebizza's other arguments, and none merits discussion.

AFFIRMED.