In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-1707

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RUBEN DELHORNO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 11-CR-46 — **J.P. Stadtmueller**, *Judge.*

ARGUED OCTOBER 23, 2018 — DECIDED FEBRUARY 8, 2019

Before KANNE, HAMILTON, and ST. EVE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellant Ruben Del-
horno filed a petition for a writ of coram nobis, a rare form of
collateral attack on a criminal judgment. This ancient com-
mon-law remedy is available to correct errors of fact and law
in criminal cases, but only when: "(1) the error alleged is 'of
the most fundamental character' as to render the criminal con-
viction 'invalid'; (2) there are 'sound reasons' for the defend-
ant's 'failure to seek earlier relief'; and (3) 'the defendant

continues to suffer from his conviction even though he is out of custody.'" *United States v. Wilkozek*, 822 F.3d 364, 368 (7th Cir. 2016), citing *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007), and *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988). Delhorno fails the second requirement. He cannot offer "sound reasons" for failing to seek earlier relief through a direct appeal or habeas corpus petition. We therefore affirm the district court's decision denying Delhorno's writ of coram nobis.

I.   *Factual and Procedural Background*

Delhorno, age 42, was born in Mexico but came to the United States with his parents when he was just three years old. He was living in the United States as a lawful permanent resident. (He could have applied for citizenship but never did.) In 2011, Delhorno was pulled over for speeding. While the officer was writing a speeding ticket, another officer arrived with his drug-detection canine. The dog sniffed the vehicle and alerted to the presence of drugs. Another officer at the scene had been instructed in the installation of "trap" compartments in vehicles and noticed that Delhorno's vehicle contained unusual wiring. The officers discovered four kilograms of cocaine in a trap compartment in Delhorno's vehicle.

Delhorno was indicted by a grand jury in the Eastern District of Wisconsin for one count of possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B). Delhorno pleaded guilty to the indictment on January 26, 2012. At the change of plea hearing, Delhorno stated that he was born in Mexico and was a permanent resident of the United States. However, there was no discussion about the immigration consequences of his guilty plea, even though the hearing took place more than a year after the

Supreme Court held in *Padilla v. Kentucky*, 559 U.S. 356 (2010), that a criminal defense lawyer provided ineffective assistance of counsel by failing to advise his client that his guilty plea would subject him to automatic deportation.

Following the change of plea hearing, the United States Probation Office prepared a presentence report that included this passage:

> 49. Mr. Delhorno explains he was born in Mexico, but came with his parents to the United States when he was three years old. His family settled in Chicago Heights, Illinois. Mr. Delhorno notes his parents came to the United States illegally, seeking better opportunities for themselves and their children. In 1988, his parents were able to take advantage of an amnesty program and were granted legal residency status. Mr. Delhorno notes at that time he also was granted legal resident status. He acknowledges at the age of 18, he could have applied for citizenship, but he has not done so. Mr. Delhorno understood all his friends were born in the United States so he never thought of himself differently, so he did not pursue citizenship. *Mr. Delhorno understands this may present problems for him, but he is trying to make arrangements to remain in the United States.*

> 50. Bureau of Immigrations and Customs Enforcement confirmed Mr. Delhorno was granted legal permanent resident status on 4/29/89. At this time, *the defendant is not under investigation*

*for deportation, but upon entry of judgement, the matter will be investigated.*

Presentence Report ¶¶ 49–50 (emphasis added).

Delhorno was sentenced on October 5, 2012. His lawyer told the judge that Delhorno was seeking a "visa to remain in the United States because he is a resident alien and never sought citizenship[.]" Delhorno's Sentencing Guideline range was 78 to 97 months in prison. He was sentenced to 60 months in prison, followed by a supervised release term of four years. The court entered the written judgment and commitment order that same day. Delhorno never filed a direct appeal or a habeas corpus petition.

On February 26, 2015, while Delhorno was in prison, he filed a motion to modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2), based on a retroactive change to the Sentencing Guidelines. After briefing, this motion was denied. On May 26, 2016, Delhorno filed an amended motion to modify his term of imprisonment pursuant to § 3582, which was also denied.

On approximately May 1, 2017, Delhorno completed his prison sentence and was transferred to the custody of the U.S. Immigration and Customs Enforcement ("ICE") for removal procedures. On October 13, 2017, Delhorno filed his petition for a writ of coram nobis. In the petition and attached affidavit, Delhorno argued that he received ineffective assistance of counsel in his criminal case because his lawyer failed to advise him that pleading guilty subjected him to mandatory deportation. He contended that if he had known this, he would never have pleaded guilty. Delhorno referenced and included the transcript from his change of plea hearing which shows

that the court also failed to address the immigration conse-
quences of his guilty plea. In support of his arguments, he
cited *Lee v. United States*, 137 S. Ct. 1958 (2017), *Padilla v. Ken-
tucky*, 559 U.S. 356 (2010), and *Hill v. Lockhart*, 474 U.S. 52, 59
(1985).

The government responded, stating that it believed the
record needed to be developed further through a hearing be-
fore the court ruled on the petition. The district court disa-
greed and denied Delhorno's petition without a hearing. Del-
horno argues on appeal that this was a mistake. We review
the district court's decision to deny an evidentiary hearing for
an abuse of discretion. See *Blanton v. United States*, 94 F.3d 227,
235 (6th Cir. 1996), citing *Green v. United States*, 65 F.3d 546,
548 (6th Cir. 1995); see also *United States v. Fuller*, 86 F.3d 105,
107 (7th Cir. 1996) (judge "had no duty to conduct an eviden-
tiary hearing if, by analogy to summary judgment, he could
determine on the basis of affidavits, depositions, or other doc-
umentary materials of evidentiary quality that there was no
genuinely contestable issue of fact"). As we explain below, the
record here provided a sufficient basis to deny the petition
without a hearing, so the district court acted within its discre-
tion in denying a hearing.

Delhorno filed a timely notice of appeal on April 2, 2018.
He also filed a motion in the Eleventh Circuit for a stay of re-
moval. That motion was denied on May 27, 2018, and Del-
horno was deported to Mexico.

II. *Analysis*

The writ of coram nobis is a means for a collateral attack
on a criminal conviction alleging errors of law or fact that af-
fect the fundamental character of the conviction, including

inadequate counsel. *Chaidez v. United States*, 568 U.S. 342 (2013). It is similar to a habeas corpus petition and affords the same type of relief, *United States v. Bonansinga*, 855 F.2d 476, 478 (7th Cir. 1988), but it is available only when a defendant is no longer in custody and thus can no longer take advantage of habeas corpus relief. *Stanbridge v. Scott*, 791 F.3d 715, 720 n.3 (7th Cir. 2015). According to the Supreme Court, the writ of coram nobis is to be used only in "extraordinary cases presenting circumstances compelling its use to achieve justice," where alternative remedies are not available. *United States v. Denedo*, 556 U.S. 904, 911 (2009), citing *United States v. Morgan*, 346 U.S. 502, 511 (1954) (internal quotation marks omitted). We have explained that a successful coram nobis petition must satisfy three prongs: "(1) the error alleged is 'of the most fundamental character' as to render the criminal conviction 'invalid'; (2) there are 'sound reasons' for the defendant's 'failure to seek earlier relief'; and (3) 'the defendant continues to suffer from his conviction even though he is out of custody.'" *United States v. Wilkozek*, 822 F.3d 364, 368 (7th Cir. 2016).

In reviewing a district court's denial of a writ of coram nobis without a hearing, this court conducts a *de novo* analysis of the legal conclusions and a factual review for clear error. *Id.* We consider the three factors in a different order here than set forth above. We conclude that Delhorno continues to suffer from his conviction, but he likely cannot demonstrate fundamental error, and he certainly cannot justify his failure to seek earlier relief. We affirm the denial of his petition for a writ of coram nobis.

1.  *Continued Suffering*

First, we have no doubt that Delhorno continues to suffer from his conviction even though he is out of custody. We have explained that coram nobis is

> a postconviction remedy, equivalent to habeas corpus or (for persons convicted in federal court) section 2255, for petitioners who have served their sentences and so cannot invoke either of those remedies but who as a result of having been convicted are laboring under some serious civil disability that they'd like to eliminate by setting aside their conviction—and removal from the United States is serious, civil, and a consequence of the petitioner's conviction.

*Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013); see also *Martignoni v. United States*, No. 10 Civ. 6671 JFK, 2011 WL 4834217, at *12 (S.D.N.Y. Oct. 12, 2011) ("Deportation is clearly a legal consequence of conviction sufficient to warrant *coram nobis* relief where all other requirements are satisfied[.]"). Delhorno is no longer in prison and is not on supervised release, so a writ of coram nobis is an appropriate means to challenge the immigration consequences of his conviction. See *Clarke*, 703 F.3d at 1101–02 (defendant on supervised release is in custody for purposes of habeas corpus and therefore cannot seek a writ of coram nobis).

Delhorno has been deported from the country where he lived since he was three years old, back to a country where he likely has minimal ties. His children and fiancée live in the United States, and he will not be able to return unless his

conviction is vacated.  This is a significant additional penalty that followed his term of imprisonment. These continuing effects satisfy this prong of the coram nobis analysis.

2.  *Fundamental Error*

To secure a writ of coram nobis, the error in the defendant's criminal conviction must be "of the most fundamental character" so as to render the conviction "invalid." *Wilkozek*, 822 F.3d at 368. Delhorno attempts to satisfy this prong through a claim for ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To do this, he must demonstrate that counsel's performance was objectively unreasonable and that the deficient performance prejudiced the defense. *Id*. While we do not base our decision on a failure to meet this prong of the coram nobis analysis without a hearing, it is very unlikely Delhorno could demonstrate that he was prejudiced.

In *Padilla v. Kentucky*, the Supreme Court held that criminal defense attorneys must inform non-citizen clients of the risks of deportation arising from guilty pleas. 559 U.S. 356, 366–68 (2010); see also *Chaidez v. United States*, 568 U.S. 342, 345–47 (2013) (concluding that *Padilla* adopted a new rule and was not retroactive). Delhorno's guilty plea and sentencing occurred more than a year after *Padilla* was issued, and we are troubled that apparently neither his counsel, the prosecutor, nor the court raised the issue of the mandatory immigration consequences with him.[1]

---

[1] Delhorno's lawyer alluded to these consequences at the sentencing hearing when he explained that Delhorno was seeking a visa to remain in the United States. There does not appear to have been any discussion of mandatory deportation as a result of the conviction.

We are not convinced, however, that this apparently deficient performance prejudiced Delhorno, as required for relief under *Strickland*. Delhorno must show "there is a reasonable probability that, but for counsel's errors, [he] would not have pled guilty and would have insisted on going to trial." *United States v. Reeves*, 695 F.3d 637, 639 (7th Cir. 2012), quoting *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006); see also *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). The evidence against Delhorno was very strong: he was stopped while driving with four kilograms of cocaine hidden in a trap compartment. Delhorno himself showed the officers how to operate the trap. Delhorno concedes that success at trial was a "long shot." Given the likelihood of conviction at trial and a potentially longer prison sentence, coupled with the fact that Delhorno was at least aware of the immigration issues, we find it unlikely that Delhorno would have proceeded to trial if he had been given proper *Padilla* warnings.

We are unpersuaded by Delhorno's comparison of his situation to that in *Lee v. United States*, a case in which the Supreme Court found that the defendant established a reasonable probability that he would not have pleaded guilty if he had known of the immigration consequences. 137 S. Ct. 1958, 1969 (2017). In *Lee*, before the defendant pleaded guilty to an aggravated felony, he had asked his attorney multiple times whether he would be deported. *Id.* at 1967–68. His attorney affirmatively told him that he would not be deported. *Id.* at 1963. Lee also specifically told the sentencing judge that deportation would affect his decision to plead guilty. *Id.* at 1968. After discovering that he would be deported, Lee immediately filed a § 2255 motion. *Id.* at 1963. Both Lee and his attorney testified at the subsequent hearing that he would not have pleaded guilty if he had known he would be deported. *Id.*

In contrast, Delhorno has produced no contemporaneous evidence showing that he would not have pleaded guilty. His protests appear to be more in the category of "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1967. These do not weigh in favor of upsetting Delhorno's guilty plea through a writ of coram nobis. *Id.* Despite our skepticism, though, the district court denied Delhorno's request for a hearing to present his argument and evidence. If this prong were dispositive, it might be necessary to remand for a hearing. Delhorno fails to satisfy the final prong, however, so we need not reach a firm conclusion on whether a hearing was necessary on the merits.

3. *Sound Reasons for Delay*

We agree with the district court that Delhorno failed to take any steps regarding his immigration status until he filed this coram nobis petition, five years after he was sentenced. As noted, a person seeking a writ of coram nobis must offer sound reasons for his failure to seek relief earlier. *Wilkozek*, 822 F.3d at 368. Delhorno has failed to justify his delay, and on this ground we affirm the denial of his petition.

Based on his presentence report, which was filed in April 2012 in advance of his October 2012 sentencing, Delhorno knew or should have known that his conviction could lead to his deportation. The report said that Delhorno knew his non-citizenship could present problems for him and that he was "trying to make arrangements to remain in the United States." The report also said that ICE would investigate his case for deportation following the entry of judgment. With this knowledge, Delhorno went ahead and pleaded guilty. At his sentencing hearing, his lawyer explained to the court that Delhorno was seeking a visa because he was a resident alien and

had never sought citizenship. Also, as the district court noted, Delhorno would have likely discovered this immigration issue when he was classified as a "deportable alien" by the Federal Bureau of Prisons when he was taken into custody.[2]

At the time when he knew or should have known about his immigration issues, Delhorno had multiple avenues for relief. He could have filed a direct appeal. He also could have filed a habeas corpus petition under 28 U.S.C. § 2255. He did neither. The statute of limitations for a habeas corpus petition would have run from "the date on which the facts supporting the claim or claims presented *could have* been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4) (emphasis added). A reasonably diligent defendant would have discovered the immigration issues by reviewing the presentence report, paying attention at the sentencing hearing, and noticing his BOP classification. Delhorno had an entire year—until October 2013—to file a habeas petition.

Delhorno has offered no justification for failing to seek earlier relief through less extraordinary channels. The record shows conclusively that he knew or should have known about his immigration issues before, during, and after his

---

[2] We assume for purposes of this appeal that no one ever told Delhorno that he would *certainly* be deported (i.e., that he was subject to mandatory deportation). At oral argument in this appeal, Delhorno's counsel explained that Delhorno may have pleaded guilty knowing there were immigration issues but with the understanding that there could be avenues for him to continue living in the United States through some sort of visa. We do not believe the distinction between a warning of mandatory deportation as opposed to likely deportation matters for our present purposes. Delhorno was clearly aware that there were immigration consequences to his guilty plea. He chose to go ahead with his plea and did not raise any challenges for five years.

sentencing. Delhorno's five-year delay in addressing this is-
sue was unreasonable and prevents the federal courts from
granting relief through the extraordinary form of a writ of co-
ram nobis. The district court's denial of Delhorno's petition is

AFFIRMED.